THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHRIS CHARLES BROWN, Defendant-Appellant.

(No. 58851;

First District (4th Division)—September 10, 1975.

Lionel J. Livingston and Dale W. Broeder, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and John T. Theis, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from a judgment entered by the Circuit Court of Cook County. Following a bench trial, the defendant was found guilty of rape. He was sentenced to a term of 4 to 12 years in the Illinois State Penitentiary.

The issues presented on appeal are (1) whether the defendant was proven guilty beyond a reasonable doubt of the offense of rape; (2) whether there was sufficient corroborative evidence to establish the defendant's guilt; and (3) whether the trial court's remarks while finding the defendant guilty were improper.

On August 20, 1971, Miss Larry Jean Clark resided alone in an apartment at 56 North Laramie Street in Chicago. Miss Clark had worked until midnight, August 19, then had stopped at a bar for a beer with

two girlfriends from work. She arrived at home alone at approximately 3 a.m. Miss Clark entered her apartment through the front door and immediately locked the door. She removed all of her clothing except a pair of panties. She went into the kitchen and prepared a sandwich, then went into the living room, turned on her record player and sat down to relax.

Shortly after sitting down, Miss Clark heard a noise, then saw a man enter the living room from the kitchen area, where the apartment's back door was located. The man was nude except for a woman's stocking which was over his head. The man, whom Miss Clark identified in court as the defendant, Chris Charles Brown, carried a knife and told Miss Clark not to scream or he would kill her.

The defendant approached Miss Clark and asked her for money. She said she had none and emptied her purse so defendant could see for himself that she had no money. Defendant sorted through the contents of the purse with one hand while holding the knife in his other hand. The defendant then asked Miss Clark where the bedroom was located. She pointed in its direction, then asked the defendant if she could finish eating her sandwich. Defendant allowed her to finish the sandwich, standing over her while she ate. Miss Clark asked if she could have a drink of water and defendant told her she could not. He then pushed her toward the bedroom by poking her in the back with the knife.

After entering the bedroom, the defendant pushed Miss Clark onto the bed, closed the door, and took off her panties. Defendant told her he still had the knife and not to try anything. Defendant had sexual intercourse with Miss Clark for two or three minutes. He then got up and left the bedroom. A few seconds later Miss Clark heard running footsteps on the roof.

Miss Clark got dressed, ran downstairs and flagged down a police car on Laramie Street. She told the policeman in the car she had been raped. The officer told her he was on traffic patrol and she should telephone the police station. Miss Clark then went to the apartment of a friend, Richard Curry, who lived in the same building as Miss Clark. Miss Clark called the police and then she and Mr. Curry returned to her apartment.

Upon returning to her apartment, Miss Clark saw two "Salem" brand cigarette butts in her ash tray. Neither Miss Clark nor Mr. Curry smoked that brand. She also noticed a long piece of green material on the floor.

Shortly thereafter, two police officers arrived and took Miss Clark to Cook County Hospital, where she was examined. The examination

showed the presence of sperm. While at the hospital, Miss Clark discussed her attack with Investigator James Sesso and other police officers. Investigator Sesso and Officer Clyde Craig drove Miss Clark home from the hospital and searched her apartment. The policemen discovered the strike plate had been removed from the jam of the rear door of the victim's apartment. Miss Clark showed the policemen the piece of green cloth which she had previously discovered. The officers examined the back porch of Miss Clark's apartment. Investigator Sesso observed a ladder built into the side of the building. The ladder led to a skylight which was open. Sesso climbed the ladder and crossed the roof of the building to another open skylight, which he climbed through, using a ladder which was under the skylight. Investigator Sesso subsequently knocked on the door of a nearby apartment. The defendant, who was identified by Sesso at trial, answered the door. He was wearing green underwear of silk-type material. While Investigator Sesso was questioning the defendant, Miss Clark and Officer Craig arrived. Immediately upon seeing the defendant, Miss Clark said, "That is the man that did it." The defendant was then placed under arrest. The defendant and the policemen went inside defendant's apartment so he could get dressed. While inside the apartment, Investigator Sesso saw a piece of material similar to that found in Miss Clark's apartment.

The defendant denied raping Miss Clark. At trial he introduced the testimony of his mother, Annie Mae Brown, who stated she shared the Laramie Street apartment with her son on the date of the crime. Mrs. Brown testified the defendant was home and asleep at the time the alleged crime occurred. Defendant took the stand and corroborated the testimony of his mother.

At the close of the evidence, the trial judge found the defendant guilty of rape and sentenced him to a term of 4 to 12 years in the Illinois State Penitentiary.

The defendant first contends he was not proven guilty beyond a reasonable doubt of the offense of rape. In support of his contention, the defendant argues the testimony of the victim was unconstitutional, vague and unbelievable; the police investigation was so abbreviated as to violate due process; and the State suppressed certain evidence which it had an affirmative duty to produce.

The State contends the defendant was proven guilty beyond a reasonable doubt where the victim positively identified the defendant as her attacker, and where the victim's testimony was substantially consistent and corroborated, and not based on any suggestive identification procedures.

■■ The record in the present case shows that Investigator Sesso was searching the victim's apartment building, investigating the crime by inquiring of residents whether they had seen or heard anything which could aid in the investigation, when he came upon the defendant's apartment. At that time, the victim, without suggestion or coercion by the police, approached the third floor of the apartment building on her own accord, and coincidentally spotted the defendant. She immediately identified him as her attacker. Noth'ng in the record indicates the identification was suggestive or coerced. To constitute a violation of due process, the identification of the defendant by the victim must be unnecessarily suggestive and conducive to irreparable mistaken identification. (*People v. McMath* (1970), 45 Ill.2d 33.) Whether an identification procedure is tainted depends upon the totality of the circumstances surrounding the identification. (*People v. Burbank* (1972), 53 Ill.2d 261.) The circumstances surrounding the defendant's identification in the instant case amounted to a "coincidental confrontation" which was perfectly proper. *People v. Canale* (1972), 52 Ill.2d 107.

It should further be noted that defense counsel filed no motion to suppress the identification of the defendant. The supreme court, in *People v. Pierce* (1972), 52 Ill.2d 7, held that where there has been no motion to suppress defendant's identification, the defendant waives his right to challenge an allegedly improper identification.

■■ Contrary to defendant's contention that the police investigation in the present case was so abbreviated as to violate due process of law, we believe the police procedures employed were proper and resulted in the prompt solution of a serious crime. The police questioned Miss Clark at the hospital, then drove her home and began their search for clues, which they found. Investigator Sesso then proceeded to follow the apparent escape trail of the rapist. Sesso's actions eventually led him to the defendant's apartment, and when Miss Clark spotted the defendant, she positively identified him as her attacker. The investigation carried out by the police was entirely proper and not violative of due process of law. The brevity of the investigation was occasioned only by its unusual success.

■■ Defendant's argument that the State suppressed certain evidence which it had an affirmative duty to produce is without merit. Defendant maintains the State should have produced the police mug shots taken of defendant on the day of his arrest. Defense counsel, however, made no request for the photo, and did not seek to introduce any photograph of the defendant in evidence. Defendant therefore cannot now complain of the State's failure to produce the mug shot.

The defendant's second contention is there was insufficient corroborative evidence to establish his guilt. In support of his contention, defendant cites the decision in *People v. Grudecki* (1940) 373 Ill. 536, 540, wherein the supreme court held:

> "Where a conviction of rape depends upon the testimony of the prosecuting witness and the defendant denies the charge, the evidence of the prosecuting witness ought to be corroborated by some other evidence, fact or circumstance in the case."

The State asserts the testimony of the victim was sufficient alone to establish the defendant's guilt, and moreover her testimony was corroborated by other facts in evidence.

■■ The testimony of the victim in the present case was clear and convincing and there is no reason to regard it as unworthy of belief. It is well settled that clear and convincing testimony of the victim standing alone is sufficient to support a conviction for rape even without corroboration. (*People v. Nichols* (1974), 17 Ill.App.3d 871.) Clear and convincing evidence, however, is not synonymous with uncontradicted or unimpeached testimony. Minor variances in the testimony may occur, and, if so, these variances constitute mere discrepancies going only to credibility. (*People v. Wright* (1972), 3 Ill.App.3d 829.) It is the task of the trier of fact, here the court, to weigh these discrepancies. If it is found the discrepancies are so minor as not to detract from the reasonableness of the victim's story as a whole, her testimony may be found to be clear and convincing. (*People v. Brown* (1963), 29 Ill.2d 375.) The testimony of the victim in the instant case contained only minor discrepancies which did not detract from the reasonableness of her story as a whole. We believe the trial court correctly weighed the credibility of Miss Clark.

■■ Moreover, in the present case there was corroboration of some of the facts. Miss Clark complained to the police she had been raped immediately after her attack. She was taken to Cook County Hospital by the police and examined by a doctor. The examination showed the presence of sperm. A stipulation to that effect was admitted into evidence at trial. In *People v. Hayes* (1974), 17 Ill.App.3d 323 (abstract opinion), the Appellate Court found the testimony of the complaining witness in a trial for rape was sufficiently corroborated by her immediate complaint and by a stipulated medical opinion regarding the presence of sperm. Furthermore, the green cloth found in the defendant's apartment was similar to the piece of green cloth found in the victim's apartment immediately after her attack. We believe the evidence presented in the present case sufficiently corroborated the testimony of the victim to sustain the conviction of rape.

· The defendant finally contends the remarks made by the trial court while finding the defendant guilty were improper.

■ ·At the close of the trial, the court made an extensive oral ruling in finding the defendant guilty of rape.·The trial judge apprised the defendant of the reasons for the court's decision. In the course of his comments, the judge spoke of the possible bias or interest of the witnesses, and what motive the victim or the police would have in not telling the truth. Nothing in the court's remarks violated defendant's rights. The court was merely giving its impression of the application of the law in the case at bar. We conclude the remarks of the trial court in finding the defendant guilty of rape were proper.

For the reasons stated herein, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

ADESKO and JOHNSON, JJ., concur.