THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EMIL "JIM" CORNILLE, Defendant-Appellant.

Fifth District   No. 5—84—0123

Opinion filed August 5, 1985.

1012

Mitchell & Armstrong, Ltd., of Marion (J. C. Mitchell; of counsel), for appellant.

Rodney Clutts, Special Prosecutor, of Anna (Kenneth R. Boyle, Stephen E. Norris, and Debra A. Buchman, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE KASSERMAN delivered the opinion of the court:

Defendant, Emil "Jim" Cornille, was found guilty by a jury of two counts of official misconduct in the office of sheriff of Massac County. Defendant was sentenced to a term of 30 months' probation and three months' periodic imprisonment and ordered to pay restitution in the amount of $22,516.44. On appeal, defendant argues that: (1) the pleadings were insufficient; (2) he was not proved guilty beyond a reasonable doubt; and (3) he is entitled to a new trial due to evidentiary or procedural errors. We affirm defendant's convictions.

The following was adduced at trial. Clinton English, the treasurer of Massac County, testified that the proper method to be used by the defendant in payment for the official charges incurred by him as sheriff of Massac county was for defendant to present his bills to the county treasurer, who would approve and pay them. The testimony of Mr. English further indicated that defendant had not turned in all his fee money to the county treasurer as he was required to do.

Dale Cougill and Eddie Cockrell, both Massac County commissioners, testified that in 1979 the county board, the State's Attorney and the defendant held a meeting concerning a crackdown on illegal drugs. At this meeting, money for purchasing information concerning illegal drugs was discussed. According to Mr. Cougill and Mr. Cockrell, $500 was to be set aside and no additional funds for such purpose were authorized by the county.

Gary Willaredt, a special agent of the Illinois Department of Law Enforcement, Division of Criminal Investigation, testified that he was assigned to investigate an allegation of misappropriation of funds in the Massac County sheriff's office which allegedly occurred between September 1980 and August 1982. In the course of Special Agent Willaredt's investigation, defendant made a statement that he had control of three bank accounts: a soda account, petty cash account and a fee account. These accounts were located in the First National Bank and City National Bank, in Metropolis. When questioned about depositing fees which came into his hands for his fee account, defendant indicated that he did not deposit between $15,000 and $17,000, which he used for the purchase of information. Defendant, according to Mr. Willaredt, appeared shocked to learn that an audit had revealed that in excess of $22,000 was unaccounted for. Special Agent Willaredt further testified that bank records regarding the sheriff's fee account

indicated that there were a number of checks which should have been deposited in the account by defendant but were not. Additionally, an unreported bank account in the sheriff's name was discovered at the Brookport National Bank in Brookport, and some checks made payable to the sheriff of Massac County had been deposited in the account. This account also contained defendant's personal funds.

Three bank employees, Hal Rush, a secretary-cashier of the First National Bank in Metropolis and Tom Pullen, its vice-president, together with Ann Hutcherson, a bookkeeper for the Brookport National Bank, testified for the State concerning various bank records which were admitted into evidence. Essentially, these witnesses stated that pursuant to a subpoena they made copies of bank records kept in the ordinary course of business. Additionally, Jerry Rowe, Sarah Matyi and Allen Wehrmeyer, all certified public accounts, testified for the State. Mr. Rowe related that he made an audit of the Massac sheriff's office in 1979 and as a result sent a letter which reminded defendant of his duty to turn over all fees to the county treasurer on a monthly basis. Ms. Matyi testified that she attempted to conduct an audit of the Massac sheriff's office in 1982. She said she received information concerning the sheriff's soda, petty cash and fee accounts but was never shown a statement of an account in the Brookport National Bank. Ms. Matyi stated that she received insufficient information from the sheriff's office to complete an audit. Mr. Wehrmeyer testified that he audited the Massac County sheriff's office in 1980 and 1981 and received no documentation of defendant's account at the Brookport National Bank.

Geraldine Makee, a certified court reporter who recorded the grand jury proceeding, testified that defendant told the grand jury names of persons to whom he had made payments for information regarding illegal drugs. She stated that defendant stated to the grand jury that he paid money to Rex Harwood and the Bruce brothers for information regarding illegal drugs and that defendant also indicated that money was dispersed for an investigation of the Kaylor and Agee farms. According to Mrs. Makee, defendant also stated to the grand jury that he wrote receipts to himself after paying cash to a drug informant but he could only approximate the amount spent.

Rex Harwood testified that he refused to sign a receipt presented to him by defendant which falsely stated that Mr. Harwood had received money for information regarding illegal drugs.

Sam Dunning, an Illinois State police officer, testified that he had worked on a case involving a marijuana field known as the Kaylor case and defendant never mentioned any money being paid for infor-

mation concerning that case.

Oliver Wells, a farmer, testified that he called the Massac County sheriff's office to report marijuana growing on the Agee farm but received no money for this information.

Phillip W. Ray, the court reporter at defendant's preliminary hearing, testified that defendant told the court that he could not reveal the names of his informants because it could endanger the informants' lives. Defendant further advised the court *in camera* that he had records indicating that he had paid for information concerning illegal drugs; however, he failed to produce them after being granted a recess to obtain these records.

Paul Stratmeyer, a member of the Massac County Board, testified that in December 1982 the county board met with auditors for the purpose of locating funds which had not been turned over to the county treasurer by defendant. Mr. Stratmeyer stated that defendant told him that he had turned all his money over to the treasurer and made no mention of using money from the sheriff's office for other purposes.

William Bruce testified for the defense that between 1980 and 1982 defendant had paid him $300 and $400 for information concerning illegal drugs.

Donald Lowery, the former State's Attorney of Massac County, testified for the defense. He said that during the meeting with the county commissioners in 1979 concerning a crackdown on illegal drugs, fees for services of informants were discussed. It was Mr. Lowery's recollection that no ceiling was put on the amount of money which could be used to pay informants and that money to pay informants was to come from the sheriff's fee account.

On rebuttal, Kermit Kruger, another Massac County commissioner, testified that he also was at the 1979 meeting with the State's Attorney and sheriff. According to Mr. Kruger, the sum of $500 was discussed as a limit to be paid for services of informants and that this money was to come from the office of the State's Attorney.

■■ Defendant contends that count I failed to properly charge the offense of official misconduct because it alleges that defendant failed to perform a mandatory duty imposed by article 7, section 9 of the Illinois Constitution (Ill. Const. 1970, art. 7, sec. 9) instead of alleging the failure to perform a mandatory duty imposed by statute. We reject this contention by simply noting that the phrase "as required by law" used in section 33—3(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 33—3(a)) includes constitutional as well as statutory duties.

■ Defendant also urges that because he was charged with the offenses of official misconduct under the Criminal Code rather than other more specific offenses found elsewhere in the statutes, the trial court lacked jurisdiction or, alternatively, that he was denied equal protection of the laws. We reject defendant's assertion since it is well settled that it is properly within the discretion of the State's Attorney to determine under which statute a defendant is to be prosecuted. *People v. McCollough* (1974), 57 Ill. 2d 440, 444, 313 N.E.2d 462, 465, *appeal dismissed* (1974), 419 U.S. 1043, 42 L. Ed. 2d 637, 95 S. Ct. 614; *People v. Golz* (1977), 53 Ill. App. 3d 654, 658, 368 N.E.2d 1069, 1072; *People v. Graham* (1975), 25 Ill. App. 3d 853, 856-57, 323 N.E.2d 441, 444.

■ Defendant next contends that he was not proved guilty of official misconduct beyond a reasonable doubt because the evidence failed to establish that he breached his mandatory duty to turn funds over to the county treasurer. We disagree. The evidence established that defendant did not turn money belonging to the sheriff's office over to the county treasurer. by defendant's own admission, he failed to turn over between $15,000 and $17,000 to the county treasurer; and, although there is evidence that permission was granted to defendant to use a portion of the receipts of the fee fund for the limited purpose of acquiring information regarding illegal drugs sales, the county commissioners who testified stated that a limit of $500 was placed on the funds to be spent by the sheriff to pay drug informants. There was also evidence that defendant commingled money from the sheriff's office with his own personal funds. The jury could reasonably have concluded that defendant failed to perform his mandatory duty to deposit all funds with the county treasurer. Although there was conflicting evidence, we note that defendant's credibility was damaged by the fact that he informed the grand jury that he paid for specified drug information but testimony at trial contradicted his assertions. We conclude that the jury properly could believe the State's witnesses and find that defendant had not complied with his mandatory duty regarding funds belonging to the sheriff's office. See *People v. Locascio* (1985), 106 Ill. 2d 529, 537.

■ Defendant further asserts that various bank records were improperly admitted into evidence because of a lack of foundation. We agree with the State, however, that an adequate foundation for the admission of these business records was made. (See Ill. Rev. Stat. 1983, ch. 38, par. 115—5.) The testimony of bank employees Mr. Rush, Mr. Pullen, Mr. Hutcherson and Special Agent Willaredt establish that the bank records were made in the regular course of business and

were accurate copies.

■ Defendant maintains that the testimony of the court reporters, Ms. Makee and Mr. Ray, was improperly admitted because it violated the best evidence rule. Since defendant failed to object on this ground during trial, we find the issue to have been waived. See *People v. Trefonas* (1956), 9 Ill. 2d 92, 98-99, 136 N.E.2d 817, 820.

■ Defendant next urges that the best evidence rule and his right to cross-examine the witnesses against him were violated because the auditors, Mr. Rowe, Ms. Matyi, and Mr. Wehrmeyer, were allowed to testify without admitting the actual audits into evidence. We reject this contention for a number of reasons. First, Ms. Matyi testified that she was unable to complete her audit and, therefore, there was no document which would amount to the best evidence. (See *Continental Illinois National Bank & Trust Co. v. Eastern Illinois Water Co.* (1975), 31 Ill. App. 3d 148, 159, 334 N.E.2d 96, 106.) More importantly, there was no violation of the best evidence rule or defendant's right to confront witnesses because those who conducted the audit were subject to cross-examination at trial. (See *people v. Ward* (1975), 61 Ill. 2d 559, 566-67, 338 N.E.2d 171, 176-77.) Finally, contrary to defendant's position, we conclude that the trial court properly applied *Wilson v. Clark* (1981), 84 Ill. 2d 186, 192-96, 417 N.E.2d 1322, 1326-27, which permits the testimony of the auditors without presenting the underlying audits. We reject defendant's attempt to distinguish *Wilson* because it is a civil case.. As in *Wilson*, discovery is available to offset the possibility of prejudice. (See 87 Ill. 2d R. 412.) Moreover, our supreme court previously has approved expert opinion in criminal cases without the admission of reports upon which the opinion is based. *People v. Ward* (1975), 61 Ill. 2d 559, 566-67, 338 N.E.2d 171, 176-77.

■ Defendant complains that certain remarks made by the prosecutor during closing argument were so prejudicial as to deny him a fair trial. We note that defendant waived the issue by not objecting when the remarks were made. *People v. King* (1977), 66 Ill. 2d 551, 559, 363 N.E.2d 838, 841, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.

■ Defendant asserts that the trial court erred by refusing to submit the second paragraph of Illinois Pattern Jury Instruction (IPI), Criminal, No. 3.02 (2d ed. 1981), concerning circumstantial evidence. The State responds that the trial court correctly refused this instruction because the evidence of defendant's admission that he had failed to turn over to the county treasurer $15,000 to $17,000 constituted direct evidence that defendant had failed to perform a mandatory

duty as required by law. We agree with the State and observe that the second paragraph of IPI Criminal 2d No. 3.02 should only be given when proof of guilt is entirely circumstantial. *People v. French* (1978), 59 Ill. App. 3d 353, 360-61, 375 N.E.2d 502, 508.

■ Defendant next asserts that the trial court erred in refusing to give defendant's tendered jury instructions Nos. 5, 6, 7 and 10. The trial court refused these instructions on the basis that they attempted to introduce the affirmative defense of ignorance or mistake and there was insufficient evidence presented by defendant to warrant giving such instructions. We agree. The trial court correctly found that there was insufficient evidence as to defendant's belief regarding his authority to spend funds of the sheriff's office to justify allowing the jury to consider a defense based on mistaken belief.

■ Finally, defendant suggests that the jury's failure to return verdicts on count II, charging him with the offense of official misconduct and count IV, charging him with the offense of theft, constitutes inconsistent verdicts, which warrant a new trial. We disagree, the jury's silence on the other counts does not give rise to an inconsistency. See *People v. Bybee* (1956), 9 Ill. 2d 214, 224, 137 N.E.2d 251, 256.

For the foregoing reasons, the judgment of the circuit court of Massac County is affirmed.

Affirmed.

JONES, P.J., and KARNS, J., concur.