THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES WASHINGTON, Defendant-Appellant.
First District (1st Division)   No. 1—87—1311

Opinion filed November 13, 1990.—Rehearing denied March 27, 1991.

148

MANNING, J., dissenting.

Randolph N. Stone, Public Defender, of Chicago (Millicent Willis, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Joseph G. Howard, and Judith C. Rice, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Defendant, James Washington, was charged by indictment with criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—13(a)(1)) and aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(a)(1)). Following a bench trial, the defendant was convicted of aggra-

vated criminal sexual assault and sentenced to 10 years' imprisonment. On appeal, the defendant contends that: (1) he received ineffective assistance of counsel where disciplinary proceedings were simultaneously pending against his defense counsel; (2) he was not proven guilty beyond a reasonable doubt where the victim's testimony was neither corroborated nor clear and convincing; and (3) the trial court considered improper factors in determining the defendant's guilt. For the following reasons, the judgment of the trial court is reversed and the cause is remanded for a new trial.

The record reveals the following. The victim testified that on May 29, 1986, she and her boyfriend paid defendant $30 to rent a room for 30 days in his apartment. The victim testified that, prior to that date, she had never met the defendant and, to the best of her knowledge, neither she nor her boyfriend, P.S., had seen the apartment prior to the rental. When P.S. entered into the rental agreement, defendant gave him one key to the apartment. Subsequently, the victim and P.S. had two keys made. The first night that they stayed in the apartment, the victim and P.S. slept on a queen size bed with only a box spring. The next day they went grocery shopping, placed the food they had purchased in the refrigerator and left the apartment. While away from the apartment, they drank four bottles of wine. Upon their return, they discovered that the burglar bars on the apartment door were locked and they could not get inside. When some of defendant's friends came to the door, Rick, who also lived in the apartment, let the friends in. At that time, the victim and P.S. also entered. Upon seeing the victim and P.S., defendant asked them to leave the apartment. Defendant and P.S. began fighting, and defendant took the apartment key from him and tore his pants pocket with a knife while looking for money. Thereafter, defendant went into the kitchen to search the victim, and upon completion of the search, she sat on the couch next to P.S. in the living room.

The victim further testified that she needed to use the bathroom and defendant followed her into the bathroom and told her to take off her pants. When she refused, defendant hit her on the head with a wine bottle and again ordered her to remove her pants. After a second refusal, he cut her on the left side of her back with the broken wine bottle. She then removed her pants and lay on the floor as instructed. Defendant removed his pants and proceeded to place his penis into her mouth, then her vagina, again in her mouth, and back in her vagina, where he ejaculated. Defendant then pulled up his pants and returned to the living room. The victim followed him shortly thereafter and saw P.S. sitting on the living room floor surrounded by five people. These individuals began threatening him and the victim. Subsequently, defendant

allowed them to leave the apartment. Once outside, the victim told P.S. about the sexual attack by defendant and about her injuries. They went to a "pay phone" and called the police. When the police arrived, they took the victim to Michael Reese Hospital for treatment. The victim testified that, while at the hospital, she gave her apartment key to P.S. in order for him to accompany the police back to defendant's apartment. She stated that she was not having a menstrual period on the day of the incident.

P.S.'s testimony was very similar to the testimony given by the victim. However, P.S. also testified that his friend Cordell told him about the availability of defendant's apartment and that P.S., Cordell and defendant went to look at the apartment. P.S. stated that the bed that he and the victim slept on was "a little less than full size." P.S. further testified that on the next day, when he and defendant were fighting, defendant tried to stab him with a "paring knife." P.S. testified that the victim went to use the bathroom and defendant followed her into the bathroom and told his friends to keep P.S. in the living room. P.S. heard "pounding and scuffling" noises on the door and walls of the bathroom. Defendant was sweating when he came out of the bathroom, and the victim came out shortly thereafter. P.S. also testified that when he and the victim left defendant's apartment, her head and hands were bleeding and she had a large spot of blood on the back of her blouse. They called the police, and the victim was taken to Michael Reese Hospital. While at the hospital, the victim gave P.S. her key to defendant's apartment. When the police and P.S. arrived at defendant's apartment, P.S. gave the key to the police, who opened the door and subsequently arrested defendant.

The parties stipulated that, if Dr. Gordon of Michael Reese Hospital were called to testify, he would state that when he examined the victim at the hospital, he noticed a .3-centimeter puncture wound on the left side of her back and a swollen laceration on her head. He would further testify that he took oral and vaginal smears from the victim which he gave to an evidence technician. It was also stipulated that Dr. Gordon would testify that when he examined the victim, she was found to be in the late state of her menstrual cycle and upon the taking of a blood sample, her blood-alcohol level was 293 milligrams. It was further stipulated that if Mary Ann Caporusso, a microanalyst for the Chicago police department, were called to testify, she would state that upon performing a test on the oral and vaginal smears, the oral smear tested negative for spermatozoa and semen and the vaginal smear tested positive for spermatozoa.

Defendant testified that he was a recovering alcoholic and he did not know the victim until he met her on May 30, 1986, at Alco drugstore with P.S. He stated that the victim followed him out of the store and asked him if he wanted a date. Defendant responded that he did not have enough money, but others at his apartment might want to put together a package deal. The victim then accompanied him to his apartment, where they started drinking and the victim began "talking in riddles." Thereafter, P.S. came to the apartment and angrily took the victim to the bedroom, where they started fighting. Defendant went into the bedroom, "broke up" the fight, and noticed that the victim had blood on her face. P.S. and the victim left the apartment, and defendant discovered that his door key and wallet were missing. Defendant denied that he had rented a room to the victim and P.S. and that they had spent the night in his apartment. Defendant further denied having sexual intercourse with the victim because she was drunk and could not set a price. Defendant testified that he receives disability insurance because his left hand has been paralyzed for three years and, as a result of the paralysis, he does not have any strength in the left hand. Defendant also testified that after he had gone to bed on the night in question, the police entered his apartment with a key and searched the apartment. The police did not recover any broken bottles and they did not discover any blood.

Detective Robert Utter testified that he was assigned to investigate the rape of the victim. When he returned to the apartment with P.S. to arrest defendant, he did not find any broken glass on the bathroom floor and he observed defendant take out his keys and wallet when he put on his trousers. Detective Utter further testified that defendant resisted the arrest and, because of defendant's strength, it took both him and another officer to handcuff defendant.

Defendant initially argues that he was denied his sixth amendment right to the effective assistance of counsel where defense counsel was subject to pending disciplinary proceedings for professional misconduct while he was acting as defendant's counsel. Defendant asserts that defense counsel's alleged incompetence was shown by his inadequate preparation for trial as evidenced by his: (1) failure to question the victim about sexual relations with another on the night of May 30, 1986; (2) failure to introduce medical records documenting defendant's disability; and (3) conducting rambling cross-examinations indicating his failure to conduct a pretrial investigation.

■ The purpose of the constitutional requirement that a defendant is entitled to the effective assistance of counsel is to insure that the defendant will receive a fair trial. (*Strickland v. Washington* (1984), 466

U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) Moreover, the benchmark for determining an ineffective assistance of counsel claim is whether counsel's performance so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. (*People v. Cunningham* (1989), 191 Ill. App. 3d 332, 337, 547 N.E.2d 765.) In order for a defendant to succeed on an ineffective assistance of counsel claim, he must show that counsel's performance was so deficient that it fell below an objective standard of reasonableness and that the performance prejudiced the defense of the case. (*Strickland*, 466 U.S. at 687, 80 L. Ed 2d at 693, 104 S. Ct. at 2064; *People v. Barnard* (1984), 104 Ill. 2d 218, 233, 470 N.E.2d 1005.) In order for a defendant to establish prejudice, he must demonstrate, "not simply a possibility of prejudice, but that the claimed error worked to his actual and substantial disadvantage." *People v. Owens* (1989), 129 Ill. 2d 303, 318, 544 N.E.2d 276.

■ In determining whether a defendant has been prejudiced, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) In making this determination, the trier of fact must consider the totality of evidence presented. (*People v. Daniels* (1987), 164 Ill. App. 3d 1055, 518 N.E.2d 669; *People v. Wilson* (1986), 149 Ill. App. 3d 1075, 501 N.E.2d 863.) It is not necessary that courts determine whether counsel's performance was deficient before analyzing the prejudice suffered by the defendant as a result of the alleged deficiencies. *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069; *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124, 1137.

■ In the present case, the State correctly argues that a strong presumption exists that conduct by counsel which involves trial strategy falls within reasonable professional judgment. Therefore, a review of counsel's competence will not be extended to his exercise of judgment, discretion or trial tactics. (*People v. Cunningham* (1989), 191 Ill. App. 3d 332, 547 N.E.2d 765.) Defendant argues that at the time of trial, there were disciplinary proceedings pending against counsel which impaired counsel's performance resulting in an inability to adequately defend his client and, therefore, a denial of competent representation.

Although the pendency of disciplinary proceedings alone does not necessarily establish that an attorney is incompetent to defend a person charged with a crime (*People v. Perry* (1989), 183 Ill. App. 3d 534, 540 N.E.2d 379), in certain circumstances, pending proceedings before the

Attorney Registration and Disciplinary Commission (the ARDC) during the same period that the attorney is representing a defendant in a capital case may affect counsel's ability to represent his client. (*People v. Williams* (1982), 93 Ill. 2d 309, 444 N.E.2d 136.) In *Williams*, defendant was sentenced to death following his convictions of murder, aggravated kidnaping and rape. Defendant appealed directly to the supreme court on the ground that he had been denied effective assistance of counsel. The supreme court affirmed the convictions and sentence. While defendant's petition for rehearing was pending, a disciplinary case involving his attorney, Archie Weston, was argued before the supreme court. In that case, the Hearing Board and Review Board of the ARDC recommended that Weston be disbarred on the grounds that, in matters unrelated to defendant's case, he had neglected legal matters entrusted to him, had committed acts prejudicial to the administration of justice and acts which intentionally caused damage and prejudice to his client, and had commingled and converted a client's funds. Weston neither answered the complaint nor appeared to defend himself. Consequently, the allegations were considered admitted and the supreme court found them adequately supported by the evidence. As a result, Weston was disbarred.

Following the determination of the disciplinary case against Weston, the supreme court found that fundamental fairness required them to consider the information that the disciplinary case had put before them when considering defendant's petition for rehearing in the criminal case, which petition was predicated on an ineffective assistance of counsel claim. After reviewing the evidence as to the charges of murder, aggravated kidnaping and rape, the supreme court held that the evidence was sufficient to prove defendant guilty beyond a reasonable doubt. However, the court also found that because of the newly acquired evidence as to the disciplinary proceedings against defense counsel at the same time he was representing defendant, it could not say, with any degree of certainty, that defendant had received effective assistance of counsel. Accordingly, it reversed and remanded the cause for a new trial. In reaching its decision, the *Williams* court stated:

> "Moreover, while we do not believe that the burden of defending three clients for capital murder before two juries, standing alone, necessarily reduced counsel's effectiveness, that fact in view of the new information now before us cannot be disregarded. In our original opinion we noted the additional burdens the simultaneous trials before separate juries placed on both the court and counsel, and for this and other reasons cautioned

against their future use. That added burden, of course, accentuates the problems now posed." 93 Ill. 2d at 325.

■■ Similarly, in the present case, while defense counsel was representing defendant at trial, he was simultaneously defending his own case before the ARDC. In fact, as a result of the disciplinary proceeding, defense counsel was eventually disbarred. (*In re Levin* (1987), 118 Ill. 2d 77, 514 N.E.2d 174.) As in *Williams*, based on the foregoing, we cannot say with any degree of certainty that defense counsel's pending disciplinary proceedings did not have a bearing on the quality of representation received by the defendant.

With respect to the alleged conflict of interest waiver prepared by defense counsel, defendant asserts that it was an acknowledgement, not a waiver, and, consequently, did not waive defense counsel's potential conflict of interest. The alleged waiver stated:

"ACKNOWLEDGEMENT

I, James Washington, acknowledge that I wish to retain SHERWOOD L. LEVIN for a criminal case I now have pending.

I have been advised by said SHERWOOD L. LEVIN that he has disciplinary charges pending and knowing that it is still my desire that he represent me in this matter.

DATED: August 1, 1986

_____

(Signature)"

■■ ■ The defendant has a fundamental right to receive effective assistance of counsel which requires that the defendant be afforded counsel who is free of conflicting interest or inconsistent obligations. (*Cuyler v. Sullivan* (1980), 446 U.S. 335, 64 L. Ed. 2d 333, 100 S. Ct. 1708; *People v. Thomas* (1989), 131 Ill. 2d 104, 545 N.E.2d 654; *People v. Olinger* (1986), 112 Ill. 2d 324, 493 N.E.2d 579.) The defendant is not required to show the existence of prejudice in order to justify a reversal of his conviction where defense counsel has an actual or possible conflict of professional interest. (*People v. Thomas* (1989), 131 Ill. 2d 104, 545 N.E.2d 654; *People v. Free* (1986), 112 Ill. 2d 154, 492 N.E.2d 1269; *People v. Washington* (1984), 101 Ill. 2d 104, 461 N.E.2d 393.) Although the defendant may waive the right to a conflict-free counsel (*Holloway v. Arkansas* (1978), 435 U.S. 475, 483 n.5, 55 L. Ed. 2d 426, 433 n.5, 98 S. Ct. 1173, 1178 n.5), the waiver is not valid unless he is admonished regarding the existence and the significance of the conflict. (*People v. Olinger* (1986), 112 Ill. 2d 324, 493 N.E.2d 579; *People v. Kester* (1977), 66 Ill. 2d 162, 361 N.E.2d 569.) In determining whether there has been an intelligent waiver of the defendant's right to the assistance of counsel, the circumstances surrounding the

claimed waiver must be reviewed and the accused's background, experience, and conduct should be considered. *People v. Washington* (1984), 101 Ill. 2d 104, 461 N.E.2d 393; *Johnson v. Zerbst* (1938), 304 U.S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019.

In the present case, the following colloquy occurred in the presence of the defendant:

"MR. LEVIN: Judge, I'm told, as I indicated to the Court, I thought there was a written waiver in the court file.

THE COURT: Okay. Record should reflect that I talked to Counsel concerning some ARDC problems that he may be having, and he has indicated that his client is aware of that and there's a waiver, is that right, Mr. Washington?

THE DEFENDANT: Yes.

MR. LEVIN: I again talked with him, Judge, and he's indicated to me he wishes to proceed today with my representing him, and wishes to persist in his waiver of a jury trial.

THE COURT: And if I recall right, none of the problems that you are having or were having had anything to do with ability.

MR. LEVIN: That's correct, your Honor.

THE COURT: Or competency to handle matters, okay? Mr. Washington, your desire is still the same in relation to a jury? In other words, you are still giving up your right to a jury trial?

THE DEFENDANT: Yes, sir, your Honor.

THE COURT: Okay. Jury waiver received."

In our view, the record does not reflect a knowing and intelligent waiver by defendant. Neither the alleged written waiver nor the explanation given by the trial court reveals the reasons as to why there could be a conflict of interest. Moreover, the trial court did not explain the significance of the conflict and its potential impact on the attorney's representation. Additionally, the record is devoid of any evidence that would support an argument that the trial court considered the background, conduct and experience of defendant when it determined that there had been an intelligent waiver. Under the facts of this case, we cannot conclude that defendant knowingly waived his right to be represented by counsel free of conflicting interest.

■ Notwithstanding the pending disciplinary proceedings and the invalid waiver, the evidence has established that in light of the actual and substantial prejudicial impact of counsel's deficiencies, the defendant was denied his right to the effective assistance of counsel when defense counsel failed to question the victim about sex with someone other than the defendant on the night of May 30, 1986, and failed to

introduce medical records documenting defendant's disability in his left hand. Defense counsel's failure to question the victim about sex with others on the night in question prejudiced defendant since sexual intercourse with another would have been very relevant in explaining the existence of spermatozoa in the victim's vagina in light of defendant's claim that he never had sexual intercourse with the victim. Similarly, defense counsel's failure to introduce medical records documenting defendant's disability in his left hand also prejudiced defendant. In particular, defendant maintained that he lacked the physical strength in his left hand to "hold a knife" or "swing a bottle" as P.S. and the victim alleged he had done. The trial court expressed concern with the evidence presented regarding defendant's disability by stating that, "[T]here is no question about the fact that the defendant has a problem with his left hand. Whether its anywhere near as serious as he indicates, I doubt it. But he does have some kind of problem with his left hand. And he does have a hand that apparently cannot be opened all the way."

■ Our supreme court has previously held that it is unnecessary for hospital records to be admitted in order to elicit an expert medical opinion. (*Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322.) Instead, an expert witness may give an opinion in response to a hypothetical question based on facts contained in medical records even if the hospital records are not in evidence. (*Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322; *People v. Ward* (1975), 61 Ill. 2d 559, 338 N.E.2d 171. See also *People v. Cornille* (1985), 136 Ill. App. 3d 1011, 484 N.E.2d 301.) While medical records are inadmissible into evidence without a proper foundation (*Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322), expert medical testimony based on medical records documenting the defendant's disability in his left hand would have been relevant to resolve the conflicting claims as to defendant's physical strength. Therefore, if expert testimony based on medical records would have supported defendant's claim of lack of strength, failure to introduce such testimony was prejudicial to defendant's case.

■ Defendant also asserts that his ineffective assistance of counsel claim is further supported by defense counsel's rambling cross-examination indicating a failure by counsel to conduct a pretrial investigation. Defendant's assertion is not supported by the record. In this case, defense counsel was operating under unique, high-pressure circumstances while simultaneously conducting a defense. The record indicates that the trial judge commented on defense counsel's "extensive job" of cross-examining the victim, witnesses and police officers even though "little impeachment" resulted. Defendant did not identify any

specific examples of rambling, and a review of defense counsel's cross-examination does not support defendant's contention that defense counsel failed to conduct a pretrial investigation.

██ Defense counsel is required by the sixth amendment to serve as a true advocate of the accused. (*People v. Hattery* (1985), 109 Ill. 2d 449, 488 N.E.2d 513; *United States v. Cronic* (1984), 466 U.S. 648, 80 L. Ed. 2d 657, 104 S. Ct. 2039.) We are not convinced that defense counsel in the present case provided the type of representation to the defendant he is required to provide under the United States and Illinois Constitutions. (U.S. Const., amend. VI; Ill. Const. 1970, art. I, §8.) Since the totality of the circumstances leads us to believe that there does exist a reasonable doubt that the results of these proceedings would have been different but for defense counsel's failure to question the victim about sex with others on the night of May 30, 1986, and defense counsel's failure to introduce expert testimony based on defendant's medical records regarding the disability in his left hand, counsel's performance undermines our confidence in the outcome of the trial. In our view, these omissions by defense counsel fall below an objective standard of reasonableness. We therefore conclude that the defendant failed to receive his constitutional right to the effective assistance of counsel and he must be given a new trial. In light of our disposition of defendant's ineffective assistance of counsel claim, it is unnecessary to address the remaining issues on appeal.

██ Finally, we believe that the evidence adduced at trial was sufficient for the trier of fact to conclude that the defendant was guilty beyond a reasonable doubt. Our belief regarding the sufficiency of the evidence does not mean we are making a finding as to defendant's guilt or innocence which would be binding on retrial, but rather our consideration of the sufficiency of the evidence admitted at trial will remove the risk of subjecting the defendant to double jeopardy. See *People v. Taylor* (1979), 76 Ill. 2d 289, 391 N.E.2d 366.

For the reasons stated above, the judgment of the circuit court of Cook County is reversed and the cause remanded for a new trial.

Reversed and remanded.

BUCKLEY, P.J., concurs.

JUSTICE MANNING, dissenting:
I must respectfully disagree with my learned colleagues to reverse this conviction and remand for a new trial. I agree with their discussion regarding the constitutional requirements established in *Strick-*

*land* and *Albanese* and subsequent cases. However, I disagree that a conflict *per se* exists, and therefore, I do not agree that no prejudice need be shown.

In addition to defendant's reliance on *Strickland,* he advances two additional bases upon which he seeks a reversal on ineffective assistance of counsel grounds. Defendant contends, and the majority agrees, that the instant case is governed by *People v. Williams* (1982), 93 Ill. 2d 309, 324, 444 N.E.2d 136, wherein the Illinois Supreme Court concluded that pending proceedings before the ARDC of the Supreme Court of Illinois during the same period that an attorney was representing three of four defendants in a capital case may have affected counsel's ability to represent his client. Defendant argues that in the case at bar there were pending at the time of trial disciplinary proceedings against trial counsel which impaired counsel's performance. He further maintains that such impairment resulted in an inability by counsel to adequately defend his client, and hence, a denial of competent representation.

We have previously held that the pendency of disciplinary proceedings alone does not necessarily establish that an attorney is incompetent to defend a person charged with a crime. (*People v. Perry* (1989), 183 Ill. App. 3d 534, 540, 540 N.E.2d 379.) Defendant's reliance on *Williams* is misplaced. The factual matrix of that case is so totally distinguishable from the case at bar that it lends no support to defendant's theory. *Williams* was a capital case in which the defense counsel represented three of four defendants. Two juries were impaneled and the trials were held simultaneously with counsel representing clients before both juries. At the same time, trial counsel had pending complaints before the Attorney Registration and Disciplinary Commission. Upon conviction and imposition of the death penalty for defendant Williams, the court initially affirmed on appeal both the conviction and the sentence. However, while a petition for rehearing was pending, the trial counsel's disciplinary case was orally argued in the supreme court. (He was subsequently disbarred, *In re Weston* (1982), 92 Ill. 2d 431, 442 N.E.2d 236.) It was at that time that the court became aware of matters which it subsequently determined could have impacted adversely on counsel's performance at defendant Williams' trial. Based upon these revelations, which included a statement by counsel regarding his mental and physical condition as a result of his woes, the supreme court granted the petition for rehearing, reversing and remanding the case for a new trial.

In granting the defendant a new trial, the court stated that because of the newly acquired information pertaining to counsel's trou-

bles with ARDC pending at the same time as this procedurally complex capital case was being tried, it could no "longer say, with any degree of assurance, that Williams received the effective assistance of counsel guaranteed by the Constitution." (*Williams*, 93 Ill. 2d at 324.) The *Williams* court cited numerous instances of inaction by counsel which under ordinary circumstances might have been attributable to either trial strategy or even an error in judgment, which do not establish incompetency. (See *People v. Washington* (1968), 41 Ill. 2d 16, 21, 241 N.E.2d 425; *People v. Green* (1967), 36 Ill. 2d 349, 351, 223 N.E.2d 101.) However, because of the uniqueness of the situation, the supreme court declined to apply the established tests generally applied in deciding whether a defendant has been deprived of his constitutional right to the assistance of counsel. (*Williams*, 93 Ill. 2d at 325.) The court went on to say "considering the unique circumstances and sequence of events in this capital case, which will *rarely, if ever, be duplicated*, that the interests of justice require that Dennis Williams be granted a new trial." (Emphasis added.) *Williams*, 93 Ill. 2d at 325.

It is my view that the instant case hardly duplicates the factual circumstances found in *Williams*. It is a one-defendant, nonjury, noncapital, noncomplex case. The unique complexities existing in the *Williams* case are nonexistent here. Hence, I see no fundamental fairness necessity to abandon the established test used to determine the deprivation of effective assistance of counsel.

The second prong of defendant's contention regarding ineffective assistance of counsel is that because a potential conflict of interest existed between himself and trial counsel, he was entitled to be admonished in detail regarding the nature of the conflict. He argues that notwithstanding a lack of actual incompetence, the devastating burden and emotional stress of an attorney being subjected to disciplinary proceedings constitute a conflict *per se* and must be intelligently and knowingly waived expressly by the client. He suggests that the proceeding which took place in the trial court addressing the waiver was a sham. If a conflict *per se* exists and if no intelligent waiver occurs, he contends no prejudice need be shown to support a reversal. In support of this argument defendant cites *Williams* (93 Ill. 2d 309), *People v. Brown* (1980), 80 Ill. App. 3d 616, 399 N.E.2d 1374, and Supreme Court Rule 401(a) (107 Ill. 2d R. 401(a)). As previously mentioned, *Williams* is inapposite. So, too, are *Brown* and Supreme Court Rule 401(a). In *Brown*, the statutory procedural safeguards are set forth concerning the waiver of a criminal defendant's right to be represented by counsel and to proceed without any attorney.

The defendant has a fundamental right to receive effective assistance of counsel which requires that the defendant be afforded counsel who is free of conflicting interest or inconsistent obligations. (*Cuyler v. Sullivan* (1980), 446 U.S. 335, 64 L. Ed. 2d 333, 100 S. Ct. 1708; *People v. Thomas* (1989), 131 Ill. 2d 104, 111, 545 N.E.2d 654; *People v. Olinger* (1986), 112 Ill. 2d 324, 339, 493 N.E.2d 579.) The defendant is not required to show the existence of prejudice in order to justify a reversal of his conviction where defense counsel has an actual or possible conflict of professional interest. (*Thomas*, 131 Ill. 2d at 111; *People v. Free* (1986), 112 Ill. 2d 154, 167, 492 N.E.2d 1269; *Washington*, 101 Ill. 2d at 110.) However, the defendant may waive the right to a conflict-free counsel (*Holloway v. Arkansas* (1978), 435 U.S. 475, 483 n.5, 55 L. Ed. 2d 426, 433 n.5, 98 S. Ct. 1173, 1178 n.5), but the waiver must be knowingly made. (*Olinger*, 112 Ill. 2d at 339; *People v. Kester* (1977), 66 Ill. 2d 162, 168, 361 N.E.2d 569.) It is well settled that a defendant has not validly waived a conflict of interest unless he is admonished regarding the existence and the significance of the conflict. *Olinger*, 112 Ill. 2d at 339; *Kester*, 66 Ill. 2d at 168.

Under the facts of this case, I do not view trial counsel's representation as a *per se* conflict of interest. Hence, I must still look to the existence of prejudice to determine if defendant was deprived of his constitutional right to the effective assistance of counsel. Assuming *arguendo* that counsel's representation could be deemed as a conflict of interest *per se*, defendant was in fact advised that counsel had pending disciplinary charges before the Attorney Registration and Disciplinary Commission, and the defendant persisted in his desire to be represented by Mr. Levin. Defendant signed an acknowledgement form which set forth Mr. Levin's problem with ARDC wherein he agreed nevertheless to retain Mr. Levin as his defense attorney. Specifically, the acknowledgement stated:

"ACKNOWLEDGEMENT

I, James Washington, acknowledge that I wish to retain SHERWOOD L. LEVIN for a criminal case I now have pending.

I have been advised by said SHERWOOD L. LEVIN that he has disciplinary charges pending and knowing that it is still my desire that he represent me in this matter.

DATED: August 1, 1986

_____

(Signature)"

The following colloquy occurred in the presence of the defendant:

"MR. LEVIN [Defense attorney]: Judge, I'm told, as I indicated to the Court, I thought there was a written waiver in the court file.

THE COURT: Okay. Record should reflect that I talked to Counsel concerning some ARDC problems that he may be having, and he has indicated that his client is aware of that and there's a waiver, is that right, Mr. Washington?

THE DEFENDANT: Yes.

MR. LEVIN: I again talked with him, Judge, and he's indicated to me he wishes to proceed today with my representing him, and wishes to persist in his waiver of a jury trial.

THE COURT: And if I recall right, none of the problems that you are having or were having had anything to do with ability.

MR. LEVIN: That's correct, your Honor.

THE COURT: Or competency to handle matters, okay? Mr. Washington, your desire is still the same in relation to a jury? In other words, you are still giving up your right to a jury trial?

THE DEFENDANT: Yes, sir, your Honor.

THE COURT: Okay. Jury waiver received."

While the defendant was informed of the disciplinary matter, it is not clear from the record that defendant knowingly and intelligently waived his right to a conflict-free lawyer. Neither the written acknowledgement nor the explanation given by the trial court guides the defendant in comprehending why there could be a conflict of interest. Moreover, the trial court did not explain the significance of the conflict and its potential impact on the attorney's representation. (*Olinger*, 112 Ill. 2d 324, 493 N.E.2d 579.) Additionally, the record is devoid of any evidence that would support an argument that the trial court considered defendant's background, conduct and experience in its determination as to whether or not an intelligent waiver occurred. See *Washington*, 101 Ill. 2d at 114; *Johnson v. Zerbst* (1938), 304 U.S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019.

In *Olinger* the Illinois Supreme Court stated that "[a] defendant will not be deemed to have waived a conflict unless he is admonished as to the existence of the conflict and its significance." (*Olinger*, 112 Ill. 2d at 339.) There the trial court tendered transcripts of tape-recorded evidence to be used against the attorney after it advised defendant of an investigation of his attorney which conceivably could lead to a conflict of interest and criminal charges. Such an extensive undertaking by the court did not occur in the instant case. In light of

the foregoing, I agree that we are unable to conclude that defendant knowingly and intelligently waived his right to a conflict-free attorney.

Consequently, assuming *arguendo* that a *per se* conflict of interest existed, I would agree with the majority that an examination of defendant's waiver reveals that the waiver was inadequate. However, because it is my view that no conflict *per se* existed, I do not agree that we need look at the waiver, but rather we are only required to make a determination of whether the attorney's specific performance was so deficient as to result in prejudice, thereby depriving defendant of his constitutional right to effective assistance of counsel.

Initially, defendant complains of the failure of his attorney to pursue a line of questioning on cross-examination relating to complainant's sexual activities on the evening in question with persons other than himself. He postulates that had such questioning occurred it could have provided an explanation for the presence of semen and spermatozoa in her vagina. He opines that such interrogation would not have been barred by the rape shield law. (Ill. Rev. Stat. 1985, ch. 38, par. 115—7.) It is his view that the rape shield law only precludes as evidence prior sexual activity. The prosecution, however, disagrees as it argues that the rape shield law does apply and also that the decision not to cross-examine plaintiff on this issue may have been simply trial strategy.

While I decline at this time to consider whether the rape shield law applies, I do not consider it necessary to do so. I agree with the State that the decision not to conduct the kind of cross-examination now suggested in retrospect by the defendant can be viewed as trial strategy. There appears nothing in the record to suggest that counsel knew he would get a favorable response from such questioning. It is a matter of sound trial practice not to ask questions if you are unsure of what the answer might be. Hence, I cannot say that counsel's failure to pursue such questioning was not a sound trial strategy. The tactic that counsel pursued instead was to argue inferences in his closing argument:

> "MR. LEVIN [Defense counsel]: I would submit to the Court that although the laboratory ultimately found the presence of semen in the vaginal area of [the victim], there is nothing, your Honor, that links that semen to this defendant.
>
> I would [state] to the Court that she is more than likely having a relationship with [P.S.] who was her live in boyfriend. That there is a likelihood that she has on occasions close in time to the incident had sexual relations with him. She's also, I would submit to the Court, a prostitute. There is nothing, your Honor, that singles out James Washington as having been the person

who deposited the semen found in her vagina as opposed to any other person."

Additionally, defendant contends that his lawyer's representation was deficient as a result of his failure to introduce into evidence medical records which documented his disability in his left hand. It is axiomatic that one cannot expect to receive perfect representation nor does the constitution require it. (*People v. Blommaert* (1989), 184 Ill. App. 3d 1065, 1075, 541 N.E.2d 144; *People v. Jackson* (1986), 145 Ill. App. 3d 789, 795, 495 N.E.2d 1359.) While medical records might have provided corroboration of defendant's disability, the trial court had an opportunity to see the defendant's use or nonuse of his left hand and by his remark was convinced that the defendant had a disability. The defendant maintained that he lacked the physical strength in his left hand to "hold a knife" or "swing a bottle" as alleged by P.S. and the victim. The trial court expressed concern with the evidence presented regarding defendant's disability by stating that "there is no question about the fact that the defendant has a problem with his left hand. Whether its anywhere near as serious as he indicates, I doubt it. But he does have some kind of problem with his left hand. And he does have a hand that apparently cannot be opened all the way." While medical records, if they existed, may have tended to corroborate the defendant's claim of lack of strength, I cannot say that counsel's failure to introduce such records rises to the level of incompetency, nor do I find that the absence of such evidence substantially prejudiced the defendant. Defendant displayed his inability to open his hand more than two-thirds of the way, demonstrating that his fingers were unable to bend; showed that while he could hold a styrofoam cup with the left hand, he was unable to lift it, and provided the court with an explanation of the paralysis. Moreover, even if counsel's failure to provide such evidence can be deemed an error in judgment, no prejudice resulted since the court found that the State's witness, P.S., corroborated the defendant's explanation of his infirmity. The court found that the paralysis in the defendant's left hand provided an explanation to P.S.'s testimony on behalf of the prosecution that defendant's friends had switched the knife out of defendant's left hand while he and P.S. were fighting.

Defendant also asserts that his ineffective assistance of counsel claim is further supported by defense counsel's rambling cross-examination, indicating a failure by counsel to conduct a pretrial investigation. As the majority points out, defendant's assertion is not supported by the record. The record indicates that the trial judge commented on defense counsel's "extensive job" of cross-examining the complainant,

witnesses and police officers even though "little impeachment" resulted. Defendant did not identify any specific examples of rambling and a review of defense counsel's cross-examination does not support defendant's contention in that connection.

It is my view that while the defendant may not have knowingly waived his right to a conflict-free lawyer, he is required to show that he was prejudiced thereby in order to substantiate his claim that he was deprived of the effective assistance of counsel. In light of the foregoing analysis, I see no prejudice suffered by the defendant as a result of Mr. Levin's representation. The record reflects that counsel vigorously examined and cross-examined the witnesses, argued extensively and pointed out conflicting and inconsistent testimony, and generally provided adversarial representation. As pointed out earlier, this case was a one-defendant bench trial which had no complex issues. I do not find a reasonable doubt that the results of the proceedings would have been different but for defense counsel's failure to question the victim about sex with others on the night of May 30, 1986, or his failure to introduce medical records relating to defendant's disability, as required by *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246; see also *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052. In reviewing the record as a whole it is my view that defendant was given adequate representation.

Defendant next contends that he was not proven guilty of aggravated criminal sexual assault beyond a reasonable doubt where the testimony of the complainant was neither clear and convincing nor corroborated. Defendant argues that the testimony of the State's witnesses was riddled with inconsistent, illogical and confused facts and the tale which was woven by the two witnesses was so ludicrous as to be totally unbelievable.

In order to find defendant guilty of aggravated criminal sexual assault, the trier of fact must find that the accused committed an act of sexual penetration by the use of force or threat of force, and that he caused the victim bodily harm or displayed, threatened to use, or used, a dangerous weapon. (*People v. Tanner* (1986), 142 Ill. App. 3d 165, 168, 491 N.E.2d 776.) The trier of fact is in a superior position to observe the demeanor of the witnesses (*People v. Dixon* (1985), 133 Ill. App. 3d 1073, 1081, 480 N.E.2d 128), and the credibility of the witnesses is a matter for the trier of fact. *People v. Jackson* (1973), 54 Ill. 2d 143, 149, 295 N.E.2d 462; *Dixon*, 133 Ill. App. 3d at 1082; *People v. Baker* (1979), 78 Ill. App. 3d 411, 416, 396 N.E.2d 1174; *People v. Mendoza* (1978), 62 Ill. App. 3d 609, 615, 378 N.E.2d 1318.

In the instant case, the resolution of defendant's guilt depended upon the credibility of the witnesses and the weight to be accorded to their testimony. Such determinations are within the province of the trial court. I would note that while there are minor inconsistencies in the testimony of the witnesses regarding collateral or insignificant facts, most of the testimony is corroborated by each witness' statements. Some of the discrepancies complained of include complainant's testimony that the bed was queen-sized and P.S.'s testimony that the bed was twin or "less than full" size; whether the apartment was or was not seen before the $30 was paid; and whether complainant was menstruating. I consider these first two discrepancies to be minor details irrelevant to the issue of whether or not on May 30, 1986, defendant followed complainant to the bathroom and forced her to have oral and vaginal sex. With respect to whether complainant was menstruating on May 30, I find no evidence in the record to support that assertion. The stipulation entered into regarding Dr. Gordon's testimony was as follows: "that he examined [complainant] and found her to be in the late stage of her menstrual cycle." I would take judicial notice of the scientific fact that the menstrual cycle of a female is 28 days. There is nothing contained in the stipulation that Dr. Gordon found the complainant to be menstruating. In any event I find this discrepancy to be likewise irrelevant to the central issue of whether defendant forced complainant to have sex with him.

On the other hand, complainant testified to many facts which were corroborated by P.S.'s testimony, Detective Utter's testimony or the medical stipulation. For instance, complainant described the sequence of events in the bathroom wherein defendant allegedly entered her orally and vaginally, but that he did not ejaculate in her mouth. The evidence presented at trial was that an oral smear and a vaginal smear were taken and the oral smear was negative but the vaginal smear was positive for semen and spermatozoa. She also testified to being struck in the head with a bottle and to being stabbed by the broken bottle. During the doctor's examination of her, he observed a puncture wound on the left side of her back and a laceration to her head with accompanying swelling. This was also observed by Detective Utter and by P.S. P.S. testified that the defendant tore his pants pocket during the struggle to retrieve the apartment key. Detective Utter testified that he observed that P.S.'s trouser pocket was torn.

Additionally, complainant immediately informed P.S. about the sexual attack and promptly notified the police. We have previously held that a prompt complaint to the police of a rape is sufficient corroboration of a complainant's testimony.

On this issue defendant complains that the trial court's reluctance to convict on the evidence presented is further evidence of the insufficiency of the evidence. It is true that the trial court commented about the high level of intoxication as it related to the witnesses' ability to observe or remember. However, the record reveals that its concerns were satisfied by Detective Utter's testimony that the witnesses provided a coherent account of what took place. While the court also remarked that the police did a "shoddy job," nowhere in this record does the court ever express any doubt of the defendant's guilt. The record reflects that the trial court took its time and very conscientiously and meticulously examined all of the evidence and made extensive findings of fact. He specifically stated:

"When I heard the witness as I indicated before, I found that she was a credible witness and I found that the witness, [P.S.], was also in that category, and I didn't believe the defendant."

I, therefore, agree with the majority that the evidence adduced at trial was sufficient for the trier of fact to conclude that the defendant was guilty beyond a reasonable doubt.

Defendant's final contention is that the trial court considered improper factors in determining defendant's guilt. He specifically maintains that the judge considered several matters outside the trial record in reaching his decision. He posits that the court, at the end of closing arguments, elicited defense counsel to speculate about the motivation prompting the complainant and witness to testify against defendant. Defendant refers to the court's questioning of counsel as his own private investigation. In support of his contention he cites *People v. Harris* (1974), 57 Ill. 2d 228, 314 N.E.2d 465, and *People v. Nelson* (1974), 58 Ill. 2d 61, 317 N.E.2d 31. Defendant's reliance on each of these cases is misplaced.

In *Harris*, the court sought to ascertain whether the alibi presented was the same in an earlier trial. In so doing the court there asked the defense counsel what defendants had told him (or his office) on a prior occasion. The trial court found defendants guilty when defense counsel was unable to corroborate defendants' alibi testimony. I find *Harris* to be clearly distinguishable from the case at bar as the court there was actually seeking to learn about evidence elicited in another proceeding, part of another record. In the instant case, it is clear that the court was simply trying to comprehend the defendant's theory. Furthermore, there is nothing contained in this record which suggests that the court used the theory advanced by Mr. Levin in determining defendant's guilt.

In *Nelson*, it was alleged that the court had engaged in two fact-finding conferences in his chambers in an *ex parte* meeting with only the State's Attorney. In the instant case, the trial court's questions were propounded in open court to defense counsel in defendant's presence. We have previously sanctioned inquiries of trial counsel for purposes of clarifying material issues in a case. (*People v. Jackson* (1975), 31 Ill. App. 3d 244, 333 N.E.2d 652.) I view the court's actions in that light. At the very most, the trial judge's conduct was harmless. Defendant has failed to demonstrate in what manner he was prejudiced.

Defendant also contends that the trial court, by its statement that defendant "had no way to account for the puncture wound in the back of the victim," shifted the burden of proof to the defendant. I view that comment as simply a pointing out that the defendant had attempted to provide an explanation regarding all of the evidence, but that he failed as to that particular evidence. In any event I discern no prejudice to the defendant by virtue of the comment.

The defendant's final complaint regarding the court's improper use of factors relates to the court's comment of the complainant's cooperation. He contends that the court based its finding of guilt on her cooperation in prosecuting defendant despite the fact that she had previously failed to appear and a rule to show cause was issued. The court's comments, however, clearly reflect that it was fully aware that initially she did fail to appear. It commented that the State had problems getting her to appear at the outset, but that when she did begin to appear she did so steadily and unfailingly. It is proper for the trial court to comment on the possible bias or interest a witness may have in testifying. *Brown*, 32 Ill. App. 3d 182.

I have determined that the record reflects that the trial court considered only competent evidence in finding defendant guilty.

Accordingly, for all of the foregoing reasons, I would affirm the judgment of the trial court finding defendant guilty of aggravated criminal sexual assault.