(No. 36667.— )

*In re* JOSEPH FRANCIS BURNS, Attorney, Respondent.

*Opinion filed May 25, 1962.*

J. R. CHRISTIANSON, of Chicago, *amicus curiae.*

HUGH M. MATCHETT, of Chicago, for respondent.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

This is a disciplinary proceeding against Joseph Francis Burns, an attorney. The Committee on Grievances of the Chicago Bar Association, as commissioners of this court under Rule 59, found that he had made serious misrepresentations to clients, and had commingled with his own funds and converted to his own use money they entrusted to him for a specific purpose. It is recommended that he be disbarred. Respondent has taken exception to the report, contending that he was not advised of the precise charge sought to be made against him and that the evidence failed to show misconduct.

The alleged misconduct concerns funds entrusted to respondent for real-estate taxes and for use in tax foreclosure proceedings which he was to initiate. It appears that in July, 1954, one Troy Voyles and his wife Dorothy purchased a vacant lot in Chicago. They were represented in the transaction by respondent as their attorney. The property was purchased subject to delinquent taxes and special assessments for 1930 and subsequent years, and on August 6, 1954, the Voyles delivered to respondent the sum of $1,209.68 to be used for the purpose of paying them. By June 3, 1957, no payment had been made on the taxes. On that date respondent informed the Voyles that the total amount required to pay all real-estate taxes to date on the property, including interest, penalties and bid at tax foreclosure proceedings, was $3,276.72, and that if they would forward the additional $2,067.04 he would "proceed with the clearing of the taxes." This sum was paid to respondent for that purpose on June 14, 1957. By October of the following year he had taken no action to cause a tax foreclosure to be instituted, nor had he paid any part of the taxes. On several occasions during that time respondent informed his clients that the taxes had been paid, but they never received any receipt.

In October, 1958, he delivered to Mrs. Voyles an estimate for redemption showing the sum of $2,741.05. He advised her that it was a receipt for payment of the taxes and that they could go ahead and build on the lot. They took the document to their contractor, who then brought them to his attorney, Theodore Kaye. The attorney was asked to check on the status of the taxes. On November 10, 1958, he investigated the matter and found that no part of the taxes had been paid and that no tax foreclosure proceedings had been instituted. He reported to Mrs. Voyles and then called respondent, who explained that he had referred the matter to another attorney (whom he did not name) and that the other attorney had neglected or overlooked the matter. Two days later Kaye conferred with respondent in the latter's office, and was told that respondent did not then have the money to pay the taxes but would obtain some in a short time and apply it to payment of all or part of the taxes.

From that time until April, 1959, Kaye sought unsuccessfully to induce the respondent to act. On April 3, 1959, respondent having taken no action except the payment of $183.64 for some special assessment installments then in default, Kaye complained to the State's Attorney. A meeting was held in the offices of the State's Attorney at which respondent stated that he needed time, that he was negotiating to sell some property, and that he would use the proceeds to pay the taxes. On April 18 he paid to the county collector the sum of $2,741.05 for the redemption of forfeited taxes on the Voyles' property for the years 1947 to 1956 inclusive. He took no further action to pay other taxes or to cause a tax foreclosure proceeding to be instituted. In April, 1960, attorney Kaye caused tax foreclosure proceedings to be instituted with reference to taxes from 1930 to 1947 inclusive, and the proceeding was completed in June, 1960.

The sums advanced to respondent exceeded the total of

his tax payments by $352.03, and that amount still remains unaccounted for. In the present proceedings he filed no answer to the complaint, introduced no evidence, and did not testify on his own behalf.

Respondent's objection that the complaint against him is not sufficiently specific is without merit. The complaint consists of a simple chronological statement beginning with the purchase of certain property in Chicago by respondent's clients in July, 1954, encumbered by unpaid taxes and special assessments. It proceeds to allege the advancement to him of funds for the purpose of tax foreclosure proceedings and payment of taxes, the subsequent false statements that he had paid the taxes, his failure to institute tax foreclosure proceedings, his commingling of the funds with his own and his conversion of them to his own use. The complaint reasonably informed respondent of the misconduct he is claimed to have committed and is sufficiently clear and specific in its charges. Cf. *In re Anderson,* 370 Ill. 515, 520.

It is readily apparent, also, that the charge of misconduct is supported by the evidence. The testimony of the clients and attorney Kaye to the facts hereinbefore related stands undisputed, and there is nothing to indicate it is incredible or unworthy of belief. Those facts establish not only a gross neglect to perform his duties but an active conversion of his clients' funds to purposes other than those for which they were entrusted to him. His admission, on November 12, 1958, and other occasions, that he did not have the money with which to pay the taxes makes it evident that he had used some of the money for other purposes. (*In re Melin,* 410 Ill. 332.) The absence of any attempt on respondent's part to explain this conduct, or to offer evidence in denial or excuse of it, leaves the court no alternative but to find that the charge of conversion is sustained. As we said with respect to a similar factual situation, "Respondent did not testify at the hearing, nor does the record contain any evidence to explain or justify the conduct.

Under. such circumstances the conclusion is inescapable that the money was not properly held for the purpose for which it was received, but was misapplied to other uses." *In re Abbamonto,* 19 Ill.2d 93.

Wrongful conversion of a client's funds is a flagrant violation of an attorney's oath and brings the legal profession into disrepute. An attorney guilty of such conduct is subject to disciplinary action. *In re Hallmann,* 384 Ill.325.

It is the order of the court that the report and recommendation of the commissioners be confirmed.

*Respondent disbarred.*