(No. 55675.—

*In re* ARCHIE BENJAMIN WESTON, Attorney,
Respondent.

*Opinion filed October 22, 1982.—Rehearing
denied November 24, 1982.*

David Beckerman, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

William J. Harte, Ltd., of Chicago (William J. Harte and David J. Walker, of counsel), for respondent.

JUSTICE UNDERWOOD delivered the opinion of the court:

In this disciplinary proceeding the Hearing Board and Review Board of our Attorney Registration and Disciplinary Commission (73 Ill. 2d Rules 751 through 771) have recommended that respondent, Archie Benjamin Weston, Sr., be disbarred. Respondent filed no answer to the Administrator's complaint, nor did he appear before either of those bodies. He did, however, file in this court a petition to remand the cause to the hearing panel for an evidentiary hearing which we treated as exceptions to the Review Board's report and recommendations (73 Ill. 2d R. 753(e)). Respondent's brief included his affidavit purporting to set forth the matters in defense or mitigation upon which he would rely if the cause were to be remanded for an evidentiary hearing. The Administrator, viewing our action regarding the petition for a remand as its denial, and the affidavit as incorporating matters *dehors* the record, has moved to strike respondent's brief. That motion was taken with the case and is now denied.

The complaint against respondent concerns his han-

dling of the estate of Ella C. Graham, who died intestate in January 1974, leaving two elderly sisters, both living in South Carolina, as her only heirs at law. Respondent, who petitioned for letters of administration in June 1975, was charged with neglect of his duties as administrator of the estate, with commingling and converting assets of the estate, and with failure to comply with various orders of the probate court. The estate, as indicated by respondent's application for inheritance tax consents and the petition for letters, consisted of a two-flat building on Chicago's south side, valued by respondent at $12,000, and personal property valued at $11,148.19. The latter figure, which is disputed by respondent, appears in typed form on the application for inheritance tax consents signed and sworn to by respondent. Paragraph 15 of respondent's affidavit attached as an appendix to his brief states in part:

> "15. Respondent did not complete the Application For Inheritance Tax Consents for Resident Decedent (made part of this record as the Administrator's Group Exhibit No. 1 before the Hearing Panel) in its present form. The handwritten portions of the application appear to respondent to be his own. He does not know who added the typed information."

The final sentence of the quoted material implies that the typed portion of the application was added after respondent had completed the handwritten portion. The falsity of that implication, at least as to a part of the application, seems rather clearly demonstrated by the manner in which respondent wrote *around* the typed portion as illustrated below:

Respondent's bond as administrator was in the amount of $16,722. The real estate was subsequently valued by the administrator *de bonis non* at $40,000.

During the 3½ years respondent served as administrator of the estate no inventory or current accounts were filed, nor was any rent collected on the building, title to which was held in the name of a bank as trustee. The taxes on the building were not paid by respondent, and it was sold in 1976 for nonpayment of the 1974 taxes. When no redemption was made during the extended redemption period, a tax deed issued to the new owner.

In April 1978 a son of one of the heirs, whose attorney had unsuccessfully prodded respondent, complained to the Attorney Registration and Disciplinary Commission regarding respondent's handling of the estate. Pursuant to instructions of the Inquiry Board (73 Ill. 2d R. 753(a)) the Administrator forwarded to the judge of the probate division of the circuit court of Cook County a copy of the complaint. Thereafter, a rule was issued by that court commanding respondent to show cause why he should not be held in contempt. He requested and secured a continuance but failed to appear on November 3, 1978, the date to which the hearing had been continued, and was removed as administrator. His affidavit states he understood the hearing was continued to December 7, the date originally appearing in the court order but which had been crossed out and the November date written in. An administrator *de bonis non* was appointed on November 3, and respondent was directed to deliver to him the assets of the estate. Subsequently the court restrained respondent from withdrawing funds from his Client Trust Account, and, on March 7, 1979, the court adjudged him in contempt for failure to turn over the estate assets and entered judgment against the surety for the full amount of the bond. By March 19, however, respondent had turned over $5,000, and the previously issued writ of attachment for contempt was quashed in an order which again directed respondent to turn over the balance of the assets. In May the administrator *de bonis non* filed a petition to surcharge respondent for waste and neglect, and a consent judgment for

$23,000 was subsequently entered against him.

When respondent neither answered the disciplinary complaint against him which had been filed with the Hearing Board nor appeared to defend himself, that board allowed the administrator's request to consider the charges admitted. The Board did require additional proof of the charges, however, and that proof consisted largely of the court and bank records.

The Hearing Board found that respondent neglected legal matters entrusted to him in violation of Disciplinary Rule 6—101(A)(3) of the Illinois Code of Professional Responsibility; that he committed acts prejudicial to the administration of justice and acts which intentionally caused damage and prejudice to his client in violation of Disciplinary Rules 1—102(A)(5) and 7—101(A)(3); and that he commingled and converted a client's funds in violation of Disciplinary Rules 9—102(B)(4) and 9—102(B)(3) (Illinois State Bar Association (1977)).

Respondent now contends that "in the interest of justice" the cause should be remanded because he has a defense to the charges. He acknowledges that he should have responded earlier but claims that he was without funds to hire counsel and was under such emotional stress that he "did not feel mentally or physically capable of presenting his case before the Hearing Panel or Review Board." The thrust of his proposed defense, as set out in the affidavit attached to the brief, is that after letters of administration were issued to him he turned the matter over to an associate in his office whom he considered competent but who, in July 1978, became mentally ill, was arrested, hospitalized and subsequently left the State. Respondent asserts that he became aware that the associate was having "difficulties in both his personal and professional life" in late 1977, but was not aware of problems in the estate until shortly before he was removed as administrator and that he was unaware of the tax sale of the building until after the redemption period

had expired. He argues that although he may be legally responsible for the losses that occurred, he is not "personally or ethically responsible." He also disputes the amount of personal property which was said to be in the estate and that rent was ever due or owing from the tenants of the building.

We cannot agree that a remand in these circumstances would be appropriate. To, in effect, recommence these proceedings and afford respondent another opportunity to defend the charges because of his claim that he could not cope with the strain in the first place would, it seems to us, be tantamount to condoning unprofessional, indifferent and dilatory behavior by one charged with professional misconduct. It would, we believe, tend to discourage attorneys from cooperating in disciplinary proceedings and could significantly increase the problems of the Attorney Registration and Disciplinary Commission. We never have and will not now encourage indifference to, or inaction regarding charges of, professional misconduct. See *In re Levenson* (1978), 71 Ill. 2d 486, 490-92; *In re Brody* (1976), 65 Ill. 2d 152, 156; *In re Simpson* (1971), 47 Ill. 2d 562, 566; *cf. In re Czachorski* (1969), 41 Ill. 2d 549, 553 (motion for continuance denied by Commission).

There are additional reasons for our refusal to remand. Respondent's defense that he did not know of the problems until it was too late simply is not supportable. This court has held that "[a]n attorney cannot avoid his professional obligations to a client by the simple device of delegating work to others." (*In re Ashbach* (1958), 13 Ill. 2d 411, 415.) Thus, respondent's contentions that his associate was responsible for the estate, and that respondent never came into personal possession of its assets, would at most serve as arguments in mitigation. But, even if we were to allow him to argue that his associate, not he, was responsible for the estate, the facts in the record and in his own affidavit do not aid him. According to that affidavit respondent began giving his

"close personal attention to the administration of the estate" in late 1977 when he became aware of his associate's mental problems. The record indicates that in February and March of 1978 respondent was contacted about his neglect of the estate by an attorney representing Ella Graham's nephew, the son of the one of the surviving sisters, who later complained to the Attorney Registration and Disciplinary Commission. In April and again in May the inquiry panel contacted respondent by letter but he did not reply. In July his associate was hospitalized and soon left the State. In August the inquiry panel notified the probate judge of the nephew's complaint and respondent was ordered to appear and show cause why he should not be held in contempt for his neglect of the estate. Respondent did appear, by counsel, on September 21 to request a continuance. He failed to appear at the November 3 hearing and was removed as administrator of the estate.

There is no doubt that well in advance of his removal respondent knew the estate was not being properly administered by his associate. Had he acted then, the real estate could have been redeemed, and a major part of the loss avoided. A simple inquiry of the land trustee would have disclosed the problem, since notice of the expiration date of the redemption period was served on both the bank and a tenant in the building in July 1978.

Respondent's contention that his duties and extensive travels as president of a national association during the 1975-78 period left him little time to supervise the attorneys in his office is not persuasive. Even though respondent considered his associate competent, he knew there were problems more than a year before the tax deed issued, and knew of some of the estate problems at least six months before the deed issued. A lawyer's primary obligation is to his clients, and neither organizational duties nor a belief in the competency of subordinates is sufficient to justify inadequate supervision, particularly after knowledge of the exist-

ence of problems is acquired.

Nor do we regard the fact that respondent was experiencing financial difficulties as relieving him of the obligation to defend the charges against him. We suspended respondent in December 1980 because of his refusal to honor subpoenas which were served upon him in connection with other disciplinary complaints. As a result of that suspension respondent's principal source of income was terminated, and, he states, he could not afford to retain counsel to represent him in this proceeding. Despite this fact, and respondent's related argument that because of the psychological strain and pressure he did not feel mentally or physically capable of presenting his case to the hearing or review boards, we are not persuaded that a remand for an evidentiary hearing is either necessary or appropriate.

Subsequent to the briefing and argument of this case and the preparation, except for this paragraph, of this opinion, a motion was filed by respondent to strike his name from the roll of attorneys licensed to practice in this State. When presented in the earlier stages of disciplinary proceedings, such motions generally receive favorable consideration. However, because of the serious nature of the unprofessional conduct involved and the untimeliness of the motion in this case, we have concluded it should be denied.

The allegations of the complaint stand admitted and are also adequately supported by the evidence. (See *In re Czachorski* (1969), 41 Ill. 2d 549, 552-53; *In re Burns* (1962), 25 Ill. 2d 56, 58-59.) Under the circumstances the recommendations of the hearing and review boards that respondent be disbarred are warranted. From their inception respondent appears to have largely ignored the disciplinary complaint and proceedings, as he did the complaints and inquiries regarding the handling of the estate. As was said in *In re Snitoff* (1972), 53 Ill. 2d 50, 55: "That the respondent continued to engage in the misconduct which was the basis of the charges against him after the disciplinary proceeding had

commenced well may have reflected to the Committee and Board a completeness of insensitivity to professional responsibilities and an indifference to or contempt for the proceeding." The primary purpose of disciplinary proceedings is " 'to protect members of the public, to maintain the integrity of the legal profession and to safeguard the administration of justice from reproach. [Citations.]' " (*In re March* (1978), 71 Ill. 2d 382, 395.) "[I]t is the obligation of this court to strike from the rolls the names of those lawyers who are unable or unwilling to meet the high standards and traditions by which we govern the conduct of the legal profession." *In re Ashbach* (1958), 13 Ill. 2d 411, 419-20; see also *In re Feldman* (1982), 89 Ill. 2d 7; *In re Snitoff* (1972), 53 Ill. 2d 50.

Accordingly, it is ordered that respondent be disbarred.

*Respondent disbarred.*