# IN THE SUPREME COURT OF IOWA

No. 16–0652

Filed October 28, 2016

Amended February 28, 2017

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Appellee,

vs.

**ATTORNEY DOE NO. 819,**

Appellant.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Respondent appeals grievance commission's order deeming the allegations in the Board's complaint admitted due to respondent's failure to timely file an answer or seek an extension. **REVERSED AND REMANDED.**

David L. Brown and Alexander E. Wonio of Hansen, McClintock & Riley, Des Moines, for appellant.

Tara M. van Brederode, Wendell J. Harms, and Susan A. Wendel, Des Moines, for appellee.

**APPEL, Justice.**

In this case, a former client of Attorney Doe's filed a complaint against Doe with the Iowa Supreme Court Attorney Disciplinary Board (Board). The complaint alleged various ethical violations in connection with a variety of investments the client made at Doe's suggestion when Doe represented the client. Doe responded with a lengthy letter denying the allegations. After investigating the matter, the Board filed charges alleging a number of ethical violations arising from transactions involving the former client.

After the filing of formal charges, Doe's counsel and the attorneys for the Board engaged in communications regarding the complaint. The Grievance Commission of the Supreme Court of Iowa (commission) entered a scheduling order in the matter. Doe, however, did not file an answer to the complaint or file a written motion for an extension of time to file the answer. According to Doe's counsel, his client could not respond because he was prevented from doing so due to health issues and because the FBI had seized certain documents related to the allegations in the complaint.

The Board filed a motion with the commission to extend the deadlines. After a hearing, the commission found that Doe had not filed an answer to the complaint and had not filed a timely written motion for extension of time to file the answer. The commission cited Iowa Court Rule 36.7 (2015), which provides that if a respondent does not answer the complaint or file a written application for extension of time to answer within twenty days, the allegations in the complaint are "considered admitted." The Board's motion to extend deadlines was granted, but the commission's order limited the issues at trial to the question of sanctions. The commission denied Doe's motion to reconsider.

We granted Doe's application for interlocutory review of the commission's order. For the reasons expressed below, we reverse the order of the commission and remand the case for further proceedings.

## I. Factual and Procedural Background.

On February 18, 2013, the Board received a complaint from a former client of Doe. In general, the complaint alleged that from 2004 to 2006, Doe induced the former client to make various loans and investments without disclosing conflicts of interest. These undisclosed conflicts, the complaint alleged, arose from Doe representing the other party or Doe being interested in the transaction. The former client claimed losses from the various investments.

On May 8, Doe responded to the complaint by providing the Board with a thirty-eight-page letter, together with substantial documentation. Doe provided supplemental materials upon the Board's request throughout 2013 and 2014.

The Board filed its complaint against Doe on September 30, 2015. An attorney for Doe accepted service of the complaint. The complaint alleged violations of Iowa Code of Professional Responsibility for Lawyers DR–102(A) (misconduct), DR 2–106(A) (fees for legal services), DR 5–101(A) (conflict of interest), DR 5–104(A) (business relations with client), and DR 5–105(C) and (D) (concurrent adverse clients). The complaint also alleged violations of Iowa Rules of Professional Conduct 32:1.4(a) and (b) (communications), 32:1.7(a) and (b) (conflict of interest), and 32:1.8(a) (conflict of interest).

On January 22, 2016, the Board filed a motion to modify the commission's previous scheduling order and to establish new deadlines. In the motion, the Board asked the commission to set deadlines for filing an answer and serving discovery responses.

Doe's counsel filed a response on January 28. Doe's counsel stated that Doe had been "unable to respond to the very complex Complaint and provide discovery responses." Doe's counsel reported that Doe had undergone "biopsies, CT and MRI scans, numerous blood tests and . . . surgeries." Doe's counsel stated that a March 29, 2016 hearing date was "currently unrealistic in light of [Doe's] medical condition."

On February 3, the Board responded to Doe's claims by asking the commission to order Doe to (1) "file a statement from a treating physician that discloses his diagnosis, treatment plan, anticipated recovery period, and prognosis"; (2) "file a statement, under oath, describing whether, and to what extent, [Doe] had been practicing law from October 15 to now or whether he has temporarily closed his law practice"; and (3) "file a statement, under oath, describing whether, and to what extent, [Doe's] ill health limited his personal activities." On February 9, the commission ordered Doe to file the statements requested by the Board by February 17.

In response to the commission's order, Doe filed three documents. Two of the documents were letters from physicians. The first physician's letter reported that Doe had prostate cancer, a prostatectomy was planned, after the surgery there should be a six-week period of "no strenuous activity," and the prognosis was excellent. The second physician's letter reported Doe's suffered from chronic vascular headaches that have been resistant to treatment, a treatment plan of further testing and medication, and an "uncertain prognosis."

The third document was Doe's affidavit describing his condition. Doe stated his health problems began about February 2015. Doe stated that after a fall and head injury he experienced continuing headaches

and one episode of paralysis. Doe opined that in June or July 2015, he began to experience tinnitus. Doe stated that prostate surgery was scheduled.

Doe stated that since the summer of 2015 he generally arrives at the office between 9:30 and 11:00 a.m. He hired a young lawyer to assist him in his legal practice. Doe stated he is "able to meet with clients, ascertain what they need or want, give some direction to the young attorney, and briefly review her work product." He also stated he could do the "planning" for franchise documents. From October to the present, Doe reported he averaged less than twelve hours of billable time per week.

With respect to the complaint, Doe stated that he was physically and emotionally unable to deal with the complaint over the past four months. Although he vehemently denied the allegations, Doe asked for "sufficient time to address these serious allegations at a time [he is] able to do so with a clear head." Doe stated, "I would hope to have my life back to some degree of normalcy soon and then address this Complaint appropriately."

The Doe affidavit also touched briefly upon the status of an FBI investigation related to the transactions involved in the complaint. According to Doe, the FBI has had possession of approximately eighteen boxes of records since August 2013.

The commission held an unrecorded hearing on February 18, 2016. On February 22, the commission issued the order that gives rise to the present dispute. In the order, the commission, on its own motion, invoked Iowa Court Rule 36.7. The commission found that Doe had failed to timely file an answer or a written request for an extension of

time to file an answer, and as a result, the allegations in the Board's complaint were considered admitted.

The commission noted that Doe's alleged disability occurred nine or more months prior to the filing of the complaint and that Doe provided no explanation for failing to file a request for an extension of time within the twenty-day answer period. With respect to the unavailability of documents in the possession of the FBI, the commission noted that while Doe made an effort to retrieve the files on December 17, 2015, and February 12, 2016, these efforts occurred after the answer was due. In addition, the commission stated, other than two emails Doe sent to the FBI, there was no specific information about what efforts were made to retrieve the files between 2013 and December 2015. The order stated, "It does not appear this was a matter of urgency for [Doe]." The order concluded, "On the record before the undersigned and based on the unambiguous language of Rule 36.7, the undersigned has no discretion and must deem the allegations of the Complaint admitted and set this matter for hearing on the appropriate sanction."

On March 3, 2016, Doe responded by filing a motion to reconsider. Doe requested an "immediate and emergent hearing." The motion sought reconsideration of the commission's sua sponte decision to invoke Iowa Court Rule 36.7 and requested an extension of time to file an answer. The Board resisted the motion.

The papers filed by the parties in response to the commission's order—the motion to reconsider and the Board's resistance—show that the parties disagree as to whether there was an informal agreement regarding the proceedings. If there was an informal agreement, the parties disagree as to its terms and whether such an agreement would be binding on the commission.

A hearing on the matter was held on March 30. On April 4, the commission entered an order denying the motion to reconsider. The commission again cited the plain language of rule 36.7 and stated that Doe's first written request for an extension of time to file an answer was filed on January 28—eighty-six days after Doe's deadline to answer and sixty-one days before the scheduled start of the evidentiary hearing. The commission rejected Doe's argument that rule 36.14 entitled him to notice and a hearing before the commission ordered the allegations considered admitted. The commission disagreed with the characterization that the commission made its own motion under rule 36.7, stating that it enforced the rule on its own terms. The commission rejected the notion that the parties could waive or amend the operation of rule 36.7. Further, the commission concluded that Iowa Rule of Civil Procedure 1.977 was inapplicable because this was not a default situation but application of an automatic rule. In any event, the commission concluded there was no colorable claim of good cause because Doe's failure to timely answer could not be characterized as mistake, inadvertence, surprise, excusable neglect, or unavoidable casualty.

On April 22, Doe filed an answer to the complaint. Doe sought interlocutory review which was granted on May 4.

**II. Discussion.**

**A. Background to Iowa Court Rule 36.7.**

1. *Text of rule 36.7.* The central issue in this case is the proper meaning of Iowa Court Rule 36.7. Prior to April 2016, the rule provided,

> The respondent shall file a written answer to the complaint within 20 days from the completed service of notice. For good cause shown upon written application, the grievance commission may grant an extension of time for filing an

> answer. If the respondent fails or refuses to file such answer within the time specified, the allegations of the complaint shall be considered admitted, and the matter shall proceed to a hearing on the issue of the appropriate sanction.

Iowa Ct. R. 36.7.

The rule appears to have been based upon the ABA Model Rules for Lawyer Disciplinary Enforcement originally adopted by the American Bar Association in 1989. *See* Model Rules for Lawyers Disciplinary Enforcement preface (Am. Bar Ass'n 2002) [hereinafter ABA Model Rules]. The relevant ABA Model Rule provides,

> The respondent shall file a written answer with the board and serve a copy on disciplinary counsel within [twenty] days after service of the formal charges, unless the time is extended by the chair of the hearing committee. In the event the respondent fails to answer within the prescribed time, or the time as extended, the factual allegations shall be deemed admitted as provided in Rule 33(A).

*See id.* r. 11(D)(3) (2002).

Rule 33(A) in turn states, "Failure to answer charges filed shall constitute an admission of the factual allegations." *Id.* r. 33(A). The commentary to ABA Model Rule 33 explains that the rule "provides remedies for a lawyer's disregard of the duty to respond to a lawful demand for information from a disciplinary authority." *Id.* r. 33(A) cmt. The commentary further observes, "Failure by respondents to answer or to appear in disciplinary matters is a significant problem." *Id.*

Since the 2002 amendments of the Model Rules for Lawyer Disciplinary Enforcement, the use of the word "shall" in legal rules has fallen into disfavor because it may indicate a mandatory or permissive rule. *See* Bryan A. Garner, *Shall We Abandon Shall?*, ABA Journal (Aug. 1, 2012, 7:20 AM), www.abajournal.com/magazine/article/shall_we_abandon_shall/. Part of the restyling of the federal rules involved removing all instances of "shall" and replacing them with "must"

or "will" or other language that clearly expresses the mandatory nature of the rule. *Id.*; Federal Plain Language Guidelines, *Use "Must" to Indicate Requirements*, www.plainlanguage.gov/howto/guidelines/FederalPLGui delines/writeMust.cfm (last visited Oct. 20, 2016); *see also* Symposium, *The Restyled Federal Rules of Evidence*, 53 Wm. & Mary L. Rev. 1435, 1441 (2012).

We have noted the ambiguity inherent in the word "shall." *See State v. Klawonn*, 609 N.W.2d 515, 521–22 (Iowa 2000) (discussing the ambiguity, but finding that "shall" imposes a duty by reference to the context and Iowa Code section 4.1(30)(*a*)). We recently amended Iowa Court Rule 36.7 to avoid any potential ambiguity. Our new rule 36.7, effective April 1, 2016, states,

> The respondent must file a written answer . . . . If the respondent fails or refuses to file an answer within the time specified, the allegations of the complaint *are deemed admitted*, and the matter *will proceed to a hearing on the issue of the appropriate sanction.*

Iowa Ct. R. 36.7 (2016) (emphasis added).

In the court order announcing the change to our rules, we affirmed the proposition that all changes to chapter 36 would have retrospective application as provided in Iowa Court Rule 34.9. Iowa Supreme Ct. Order, *Amendments to Iowa Court Rules on Professional Regulation* (Jan. 26, 2016). We explained, "These chapters are procedural, and do not establish standards for attorney conduct." *Id.* We further emphasized that we apply the ethical standards that were in effect at the time of the conduct, but that we traditionally apply the procedural rules as they exist at the time of the hearing before the commission. *Id.*

Here, the hearing before the commission on the Board's motion occurred on February 18, 2016, before the effective date of our amended

rules. At the time of the hearing on the motion, the prior version of the rule was in effect. On the other hand, by the time of any hearing on the merits will occur in this matter, the 2016 version of the rule will apply.

2. *Disciplinary precedent in other states.* There is a body of precedents in other states dealing with the question of the consequences of a respondent's failure to timely answer a complaint in an attorney disciplinary proceeding. *See generally* Debra T. Landis, Annotation, *Failure to Co-Operate With or Obey Disciplinary Authorities as Ground for Disciplining Attorney—Modern Cases*, 37 A.L.R. 4th 646 (1985 & Supp. 2016); 7 Am. Jur. 2d *Attorneys at Law* § 107, at 168 (2007). Because the language of the applicable disciplinary rules varies, the precedents are of limited value. Nonetheless, the precedents shed light on the interpretive considerations that may be brought to bear on the question.

In *In re Weston*, the Illinois Supreme Court considered a case in which an attorney sought to file a response after the disciplinary commission had submitted the matter to the court. 442 N.E.2d 236, 238 (Ill. 1982). The commission considered the charges admitted after the respondent failed to answer or appear to defend himself. *Id.* The respondent asked the court to remand the case, arguing that he had been previously without funds to hire counsel and was unable to defend himself because he was not physically or mentally capable of presenting his case. *Id.* On this later point, the Illinois Supreme Court stated,

> To . . . afford respondent another opportunity to defend the charges because of his claim that he could not cope with the strain in the first place would, it seems to us, be tantamount to condoning unprofessional, indifferent and dilatory behavior by one charged with professional misconduct. It would, we believe, tend to discourage attorneys from cooperating in disciplinary proceedings . . . .

*Id. In re Weston* may be distinguished from the current case, however, in that the case was already pending before the supreme court when the respondent proposed filing an answer. Here, an answer was filed while the matter was still pending before the commission.

In *In re Disciplinary Action Against Larson*, the Supreme Court of Minnesota considered a case in which an attorney failed to file an answer within the time allowed by the Minnesota rule by a wide margin but subsequently filed an answer the day before a show-cause hearing. 324 N.W.2d 656, 657 (Minn. 1982) (per curiam). The Minnesota rule provided, "If the respondent fails to file an answer within the time provided or any extension of time this Court may grant, the petition's allegations shall be deemed admitted and this Court *may* proceed . . . ." *Id.* at 657–58 (emphasis added). The Minnesota court held that it could, if it wished, excuse the lateness and accept the respondent's answer. *Id.* at 658. The court, however, viewed the respondent's behavior as "procedural fencing" since the respondent had not asked for an extension of time nor offered any reason or excuse for his lateness. *Id.* Additionally, the substance of the belated answer did not seek a hearing on the facts, but included respondent's own request to be disbarred. *Id.* The court determined that these circumstances did not warrant respondent's late answer to be excused. *Id.*

Notably, however, the Minnesota rule provided that the court "may" proceed if no answer is filed. The Iowa rule does not use the term "may." The Minnesota court, however, has recently held that if a respondent fails to file a timely answer, "[u]pon the Director's [of the Office of Lawyers Professional Responsibility] motion, we deem[ ] the allegations in the petition admitted." *In re Disciplinary Action Against Ulanowski*, 834 N.W.2d 697, 701 (Minn. 2013) (per curiam).

The Supreme Court of New Jersey considered the effect of the failure of a respondent to timely respond to three complaints. *In re Kern,* 345 A.2d 321, 321 (N.J. 1975) (per curiam). The respondent in *In re Kern* did not file a response within the time frame and only responded after "repeated urging" by members of the ethics committee. *Id.* The New Jersey court noted,

> For good and sufficient reason an Ethics Committee may, and customarily does, grant such further time as may be reasonably requested. But such an extension of time should never be thought of as being automatically available nor should it be granted except for good cause and then only for a definite and reasonably short interval.

*Id.* The New Jersey court upheld the dismissal of an order to show cause for failure to file a timely answer. *Id.* at 322.

Finally, the Supreme Court of Louisiana considered whether charges should be deemed admitted after a respondent failed to answer a complaint. *In re Brown,* 939 So. 2d 1241, 1242 (La. 2006) (per curiam). The respondent claimed he did not think an answer was necessary because the matter had been previously resolved by consent discipline in the form of a public reprimand. *Id.* In a hearing before the disciplinary commission, the respondent again asserted that no answer was necessary and contested some of the factual allegations in the underlying complaint. *Id.* Citing prior precedent, the Louisiana court explained that it liberally interpreted its "deemed admitted" rule so as to not prevent lawyers who wished to defend themselves from formal charges from doing so. *Id.* at 1242–43. The court vacated the order deeming the factual allegations admitted to permit the respondent to contest the case on the merits. *Id.* at 1244.

### B.  Analysis and Application of Rule.

1. *Mandatory vs. directory issue.*  We begin our analysis and application of the rule in this case by considering whether the rule is "mandatory" or "directory."  In some contexts, the law makes a distinction between "shall" deadlines that are mandatory and those that are merely directory.  *See generally* 3 Norman Singer & Shambie Singer, *Sutherland Statutory Construction* § 57:2, at 6 (7th ed. 2008).

We explored the mandatory–directory distinction in *Taylor v. Department of Transportation,* 260 N.W.2d 521 (Iowa 1977).  In *Taylor,* an appellant charged with operating a motor vehicle while under the influence contended that because the department of transportation failed to provide him a hearing within twenty days as required by Iowa Code section 321B.8, the case against him should have been dismissed.  *Id.* at 522.  The *Taylor* court rejected dismissal.  *Id.* at 524.  According to the *Taylor* court,

> Mandatory and directory statutes each impose duties.  The difference between them lies in the consequence for failure to perform the duty. . . .  If the prescribed duty is essential to the main objective of the statute, the statute ordinarily is mandatory and a violation will invalidate subsequent proceedings under it.  If the duty is not essential to accomplishing the principal purpose of the statute but is designed to assure order and promptness in the proceeding, the statute ordinarily is directory and a violation will not invalidate subsequent proceedings unless prejudice is shown.

*Id.* at 522–23.

We have also addressed the distinction between mandatory and directory requirements in the attorney disciplinary context.  In *Committee on Professional Ethics & Conduct v. Michelson,* we held that a rule requiring a hearing within thirty days from date of service was directory.  345 N.W.2d 112, 117 (Iowa 1984).  Similarly, in *Committee on*

*Professional Ethics & Conduct v. Behnke*, we held that a rule requiring the commission to file a dispositive ruling within a prescribed time period was also directory. 276 N.W.2d 838, 842 (Iowa 1979).

In *Iowa Supreme Court Attorney Disciplinary Board v. Attorney Doe No. 639*, however, we held a rule providing that if the Board wants to appeal the commission's decision the application must be filed within ten days was mandatory and not directory. 748 N.W.2d 208, 210 (Iowa 2008); *see* Iowa Ct. R. 36.11(2) (2008). We distinguished *Attorney Doe No. 639* from *Taylor*, *Michelson*, and *Behnke* because, among other reasons, the ten-day-filing rule provided a consequence for the Board failing to file within ten days, namely that the commission's decision is final. *Id.* This consequence, we held, clearly evinced the intent of the court to make the ten-day-filing rule mandatory. *Id.*

We have not yet had occasion to consider whether considering allegations admitted in Iowa Court Rule 36.7 is mandatory or directory. The main objective of rule 36.7 is found both in the text of the rule and in the commentary to the ABA Model Rule upon which it is based— encouraging respondents to file a written answer to the complaint and thus cooperate with the commission. *See* ABA Model Rules r. 33(A) & cmt. Establishing a deadline for the answer and consequences for ignoring that deadline by failing to answer or request an extension is essential to accomplish the main objective of the rule. *See Taylor*, 260 N.W.2d at 522–23.

Based on the language of the rule itself and its underlying purpose, we conclude that considering allegations admitted in Iowa Court Rule 36.7 describes a consequence of noncompliance and is thus mandatory and not directory. The language of the rule on its face describes a consequence and is self-executing. Further, the principal purpose of the

rule will not be accomplished if the deadline for responding to the Board's complaint is directory only. *See Taylor*, 260 N.W.2d at 522–23.

2. *Authority of commission to act without a motion to enforce by the Board.* Doe claims that the commission erred in considering the impact of rule 36.7 "on its own motion." We have not yet had occasion to consider explicitly whether a motion is required in a proceeding in which the respondent has at least appeared and participated in the proceeding. We have, however, enforced the rule without a motion in situations when the respondent has not appeared in the proceedings. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hearity*, 812 N.W.2d 614, 616–17 (Iowa 2012); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lickiss*, 786 N.W.2d 860, 864 (Iowa 2010); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Moonen*, 706 N.W.2d 391, 395 (Iowa 2005).

A number of reported cases from other states note that the disciplinary authority filed a motion to enforce similar rules deeming allegations in a complaint admitted when the respondent failed to file a timely answer. *In re Marsh*, 1 Cal. State Bar Ct. Rptr. 291, 295 (State Bar Ct. 1990) (granting examiner's motion to deem allegations admitted); *Fla. Bar v. Morrison*, 669 So. 2d 1040, 1041 (Fla. 1996) (per curiam) (noting the bar filed motion to deem matters admitted); *Fla. Bar v. Daniel*, 626 So. 2d 178, 182 (Fla. 1993) (per curiam) (stating the bar filed motion to deem matters admitted); *In re Hooks*, 741 S.E.2d 645, 646 (Ga. 2013) (per curiam) (deeming facts admitted in disciplinary hearing where respondent failed to file answers on motion); *In re Webb*, 475 N.E.2d 523, 524 (Ill. 1985) (stating the hearing panel deemed allegations in complaint admitted "[o]n motion of the Administrator"); *In re Brown*, 939 So. 2d at 1242 (stating disciplinary board filed motion to have formal charges deemed admitted); *In re Ulanowski,* 834 N.W.2d at 701 (deeming

allegations in complaint admitted on the director's motion); *State ex rel. Okla. Bar Ass'n v. Mirando*, 376 P.3d 232, 239 (Okla. 2016) (stating the bar filed motion to deem allegations admitted); *State ex rel. Okla. Bar Ass'n v. Knight*, 359 P.3d 1122, 1127 (Okla. 2015) (stating the motion to deem complaint allegations admitted was granted); *In re Kline*, 781 N.W.2d 492, 493 (Wis. 2010) (finding the commission successfully moved to deem allegations in complaint admitted). These cases, however, do not necessarily stand for the proposition that a motion must be filed. The cases only show that a motion is often employed as a vehicle to bring the issue to the attention of the disciplinary authority.

There is, however, authority in nondisciplinary settings for the proposition that no motion is required to enforce a rule providing that allegations or requests for admissions are considered or deemed admitted when the opposing party fails to respond. In the context of requests for admissions under the Iowa Rules of Civil Procedure, we have held that when a party fails to file a timely response to requests for admissions, the party seeking to avoid application of the rule must file a motion seeking to withdraw the facts deemed admitted. *Allied Gas & Chem. Co. v. Federated Mut. Ins. Co.*, 332 N.W.2d 877, 879 (Iowa 1983). When the request to withdraw the admissions is not timely, the express language of the rule provides that the court has discretion to consider whether or not to allow withdrawal. *Id.* Cases in other jurisdictions support the view that once a party has failed to timely answer a request for admissions, the allegations in the requests are deemed admitted without further motion. *See, e.g.*, *Tyler v. Auto. Fin. Co.*, 113 So. 3d 1236, 1240 (Miss. 2013) (holding rule regarding admissions is "self-executing" and no motion to have request deemed admitted is required); *Tymar, LLC v. Two Men & a Truck*, 805 N.W.2d 648, 657 (Neb. 2011)

(holding failure to respond to a request for admission constitutes an admission by that party of the subject matter of the request); *Curry v. Clayton*, 715 S.W.2d 77, 79 (Tex. Ct. App. 1986) (stating requests for admission automatically deemed admitted after thirty days if no motion to extend time filed).

The fundamental question here is who must file a motion when a respondent in a disciplinary proceeding fails to timely file an answer under rule 36.7. Must the Board affirmatively seek to enforce the rule through a motion or is the burden on the respondent to file a motion to avoid the consequences of the rule? In our view, the best interpretation of the Iowa rule is that it prescribes consequences for failure to file a timely answer and that these consequences occur without the requirement that the Board file a motion to enforce the rule. We base our conclusion on the language of the rule. The failure to file a timely response to the allegations in the Board's complaint is "considered admitted." In other words, it is the equivalent of an express admission in a responsive pleading that is binding on the responding party. The Iowa rule then explicitly addresses the question of motion practice with respect to the failure of a respondent to file a timely answer. The rule requires the *respondent* to file a motion to *avoid* the consequences of the rule. It does not require *the Board* to file a motion to *enforce it.*

3. *Authority of Board to waive the mandatory requirement.* Having concluded that the rule is mandatory and that it does not require a motion from the Board to be enforced, the question arises whether the Board may waive the requirements of the rule. Again, we have not considered this issue before. At oral argument, the Board candidly admitted that as a matter of practice, the Board works with attorneys to

obtain answers and routinely allows the parties additional time to file answers beyond the twenty-day period established in rule 36.7.

We think the best reading of the language of the rule, however, is that the *Board* may not waive enforcement of the mandatory rule. Only the *commission,* upon the filing of a proper motion by the respondent, may determine that the mandatory rule should not be enforced "for good cause." The Board, of course, may agree that good cause is shown by a respondent, but it cannot usurp the role of the commission in determining whether a respondent has shown good cause for failure to comply. When a respondent requires additional time, the proper mechanism is for the respondent to file a motion with the commission which the Board, in its discretion, may choose not to resist.

4. *Commission's failure to find good cause.* As the respondent correctly points out, the Board, when it moved for modification of deadlines in this matter, did not expressly cite rule 36.7 or argue that the rule required that the allegations in the Board's complaint be considered admitted. After the commission filed its order enforcing the rule, the respondent filed papers with the commission explaining his position. After the commission denied reconsideration of its ruling, the respondent filed an answer.

Although not labeled as such, we conclude the papers filed by the respondent, in context, amount to a written motion to extend the deadline for filing an answer for good cause. *See Allied Gas & Chem. Co.,* 332 N.W.2d at 879 (stating there is no need to distinguish between a motion to file an untimely response and a motion to withdraw admission); *In re Eickman's Estate,* 291 N.W.2d 308, 311 (Iowa 1980) (holding motions to file a late response and motions to withdraw admission are similar and the same test should be applied); *Double D*

*Land & Cattle Co. v. Brown*, 541 N.W.2d 547, 550 (Iowa Ct. App. 1995) (stating a motion to file an untimely response and a motion to withdraw admission are similar). Such a motion is, of course, authorized by rule 36.7. The rule does not explicitly impose a time for filing of such a motion, though it seems obvious that the best practice would be to file such a motion before the expiration of the twenty-day time period to answer. Because the rule does not contain a time requirement for the filing of a motion to extend the period of time to answer for good cause, however, we question whether the respondent's filings in this case are untimely. In any event, under the approach in *Allied Gas & Chemical Co.*, the commission has the discretion to consider an untimely motion to set aside allegations which were considered admitted because of a failure to respond. *See* 332 N.W.2d at 879.

We now turn to the merits of the good-cause issue. We believe the commission is entitled to some discretion on the good-cause question. *See McElroy v. State*, 637 N.W.2d 488, 493 (Iowa 2001) ("We review a decision of the district court to permit the filing of an untimely answer [in a civil case] for an abuse of discretion."); *see also Ireland v. Carpenter*, 879 A.2d 35, 39 (Me. 2005) (ruling on good cause for motion to file a late answer reviewed for abuse of discretion). The commission should generally favor hearing disciplinary cases on the merits when an attorney indicates he wishes to respond and participate in a formal hearing and has provided the Board with documents demonstrating a denial of the charges even though the deadlines established in rule 36.7 have not been met. *See In re Brown*, 939 So. 2d at 1242–43.

In this case, the respondent's counsel apparently believed that he had an informal agreement of some kind that the Board would not seek to enforce rule 36.7. Respondent was providing information to the

Board, though not at a pace that we would ordinarily expect in disciplinary proceedings. Although the record does not provide direct evidence of an agreement between the respondent and the Board, it is noteworthy that the Board did not seek to enforce rule 36.7 when it sought to establish a new schedule, thereby giving some support for respondent's position. Further, the Board has a practice of generally allowing a reasonable period of time to file an answer beyond the twenty days. The practice of the Board generally, and the course of conduct between the respondent and the Board specifically, did not suggest that the respondent was at risk of forfeiting his right to litigate the merits of the action by failing to file an answer.

Further, as we have stated above, the issues presented under rule 36.7 included questions of first impression. Like the commission, we question whether the respondent made the case for a lengthy or indefinite extension of time to answer the Board's complaint. Nonetheless, we think the legal uncertainties surrounding rule 36.7, the Board's general and specific acquiescence in the failure of respondents to file timely answers, Doe's active, if dilatory, participation in the proceedings, and the preference for deciding disciplinary cases on the merits provides sufficient good cause that the commission should have allowed a brief period of time to allow the respondent to file an answer.

We emphasize that we do not regard compliance with rule 36.7 as merely a good idea or an aspirational goal. Lawyers subject to disciplinary proceedings must cooperate in a prompt disposition and comply with mandatory rules. To the extent good cause in this proceeding was based on ambiguity in rule 36.7 and whether the Board must file a motion to enforce it, that ambiguity is now resolved. Respondents in disciplinary proceedings are admonished that the failure

to timely respond to the Board's complaint results in admission of the allegations that may be unraveled only if the respondent shows good cause for the delay. Although we prefer deciding disciplinary proceedings on the merits, extensions of time to respond to the Board's complaint are not automatically granted and should ordinarily be of a relatively short duration. *See In re Kern*, 345 A.2d at 326. Respondents should regard disciplinary proceedings as a priority, not an unpleasant task that may be avoided through inordinate delay.

We deny Doe's request that the matter be heard before a different grievance panel. There shall be no further proceedings in the matter until procedendo is entered.

## III. Conclusion.

For the above reasons, we conclude that the commission should have granted respondent a brief extension of time to file an answer. An answer has now been filed. We vacate the order of the commission to the extent it prohibits litigation on the merits of the Board's allegations. We remand the matter to the commission for a hearing on both the merits of the Board's complaint and on sanctions, if any, that may be appropriate.

**REVERSED AND REMANDED.**