# IN THE COURT OF APPEALS OF IOWA

No. 22-1470
Filed February 22, 2023

**IN THE INTEREST OF J.R.,**
**Minor Child,**

**K.R., Mother,**
        Appellant,
_____

Appeal from the Iowa District Court for Osceola County,
Shawna L. Ditsworth, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Tobias A. Cosgrove, Sibley, for appellant mother.

Brenna Bird, Attorney General, and Mary A. Triick, Assistant Attorney
General, for appellee State.

Alexandria Celli Smith of Sandy Law Firm, Spirit Lake, attorney and
guardian ad litem for minor child.

Considered by Bower, C.J, and Badding and Buller, JJ.

**BULLER, Judge.**

The mother appeals from an order terminating her parental rights. She challenges placement of the child after termination and urges that a permissive exception should have precluded termination. We affirm.

### I.    Background Facts and Proceedings

Before the birth of the child at issue in this appeal, the Iowa Department of Health and Human Services (HHS) found the mother repeatedly used methamphetamine while caring for other children. The mother's rights to those children were terminated in 2014 and 2015.

When the child at issue in this appeal was born in 2019, the child's meconium tested positive for methamphetamine, leading to reports to Nebraska's and North Dakota's child-welfare agencies. In 2020, HHS became aware that the mother was using methamphetamine while caring for the child, then eight months old. There were also reports that the mother was abusing prescription medication and that the mother and child were staying in homes where illegal drugs were used. The child's fictive father also had a history of methamphetamine use. Neither the mother nor fictive father cooperated with HHS efforts, and the child was placed with the fictive paternal grandfather pursuant to an ex parte removal order.

When first assessed, the mother admitted to substance abuse and seemed amenable to inpatient treatment. The mother also admitted to her history of involvement with various states' child-welfare agencies and to spending time in both jail and prison. The fictive father remained uncooperative and refused drug testing, as he believed he would test positive for marijuana. The fictive father

admitted that he and the mother had abused controlled substances, including methamphetamine, for a long time.

In June 2020, the mother, fictive father, and child all tested positive for amphetamines and methamphetamine on a hair test. HHS made a founded child-abuse assessment against the mother and fictive father on that basis. And the child was adjudicated as a child in need of assistance (CINA). The child was placed with the mother on the condition that the mother participate in and complete inpatient treatment. A caveat of the placement was that, if the mother left or unsuccessfully discharged the treatment program, placement and custody would automatically revert to HHS.

In July 2020, the mother left the treatment center against medical advice and moved in with the fictive grandfather. The mother briefly returned to the treatment center, but she left again without successfully completing the program and moved in with the fictive father. The child was placed with the fictive grandfather while remaining in HHS custody.

For the later months of 2020, the mother appeared to maintain sobriety and used services. The CINA adjudication continued, and the mother was ordered to comply with drug testing. The child continued to reside with the fictive grandfather.

In February 2021, the mother disclosed to HHS that she was pregnant. There was conflict between the fictive father and the mother, and they temporarily separated.

In May 2021, the mother caused a car accident with the child in the car. The mother apparently fell asleep at the wheel, failed to yield at a stop sign, and crashed into another vehicle. The child did not suffer any injuries in the crash. The

mother was taken to the hospital, where she gave birth to the child's youngest sibling (not at issue in this appeal). Once again, the mother and newborn child tested positive for both amphetamines and methamphetamine. The mother admitted to using methamphetamine three days before the crash, while pregnant. Around the same time, the fictive father's hair also tested positive for methamphetamine. HHS once again made founded child-abuse assessments against both the mother and fictive father.

At a June 2021 permanency hearing, the parties agreed to continue reunification efforts for the mother over the next six months, so long as she addressed her substance-abuse problems and followed case plan recommendations. Custody of the child remained with HHS.

At some point between February and June 2021, the mother and fictive father got back together. The sheriff's office responded to a call from a hotel manager, describing a woman (later identified as the mother) who stumbled into the lobby and needed an ambulance. The mother reported that the fictive father grabbed her and caused her to fall, which aggravated her concussion from the May car accident. The mother and fictive father started residing together again some time after that. In September 2021, both the mother and fictive father once again tested positive for amphetamines and methamphetamine. The fictive father blamed his exposure on the mother, but his November sweat patch confirmed ongoing methamphetamine usage. The mother admitted that she and the fictive father used marijuana and methamphetamine "one or two nights" each week.

The mother and fictive father have had some degree of on-again/off-again relationship since then. The mother was also romantically linked to another

methamphetamine user, and she tested positive for amphetamine again in February 2022. Both the mother and fictive father refused an HHS-requested drug test in May 2022.

At the time of the termination hearing, the child was placed in a pre-adoptive home and was generally progressing. The State and guardian ad litem both recommended termination of parental rights and adoption. The mother requested guardianship placement with the fictive grandfather. The fictive grandfather, as an intervenor, requested placement with the fictive father or himself. The fictive father, also as an intervenor, requested placement with himself.

The juvenile court terminated the mother's parental rights and placed custody with HHS for adoption. Notices of appeal were filed by the mother, fictive father, and fictive grandfather. The fictive father's and fictive grandfather's intervenor–appeals were dismissed by the supreme court when they failed to file petitions on appeal or other appellate papers, leaving only the mother's petition for resolution by our court.

## II. Discussion

The mother raises two issues on appeal. First, she asserts that the juvenile court should have placed the child with the fictive father or fictive grandfather. Second, she asserts her bond with the child warrants application of a permissive exception to termination. Neither claim warrants reversal.

"We review termination proceedings de novo." *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). "The primary interest in termination proceedings is the best interests of the child." *Id.*

As to the first issue, the mother's complaint that the fictive father or fictive grandfather were better placements, we agree with the State that the mother lacks standing to bring this claim. *See In re K.A.*, 516 N.W.2d 35, 38 (Iowa Ct. App. 1994) (holding that a parent whose rights were terminated had no right to participate in a placement hearing because "termination of [the mother's] rights concerning these three children divest[ed] her of all privileges, duties, and powers with respect to the children"); *In re D.B.*, 483 N.W.2d 344, 346 (Iowa Ct. App. 1992) (refusing to consider claim about placement, made by parent whose rights were terminated, because termination divested the parent of "any legally recognizable interest she would have concerning the guardianship or custody of" the child). This lack of standing ends the analysis, given the supreme court's dismissal of the intervenors' appeals. To the extent the mother makes policy arguments in her petition about what the guardianship provision of the statute should say, rather than what it does, that is for the General Assembly to decide—not the courts. *In re Guardianship of Radda*, 955 N.W.2d 203, 214 (Iowa 2021) ("Policy arguments to amend the statue should be directed to the legislature." (quoting *In re Est. of Whalen*, 827 N.W.2d 184, 194 (Iowa 2013))).

We note the mother's challenge on appeal appears limited to asserting the juvenile court erred under Iowa Code section 232.117(3) (2022), involving placement of the child after termination; she does not argue the court should have ordered a guardianship in lieu of termination pursuant to section 232.104(2)(d)(2). In any event, even if the mother had requested a guardianship placement, termination would still be warranted given her ongoing struggle with substance abuse and involvement with other substance abusers. *See In re B.T.*, 894 N.W.2d

29, 32 (Iowa Ct. App. 2017) ("[A] guardianship is not a legally preferable alternative to termination.").

Second, it is debatable whether the mother preserved error as to the permissive bond exception. *See In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012) ("[T]he general rule that appellate arguments must first be raised in the trial court applies to CINA and termination of parental rights cases."). As the State correctly points out, the juvenile court did not seem to think the mother adequately raised the issue, writing: "Although [the mother] loves [the child], the Court does not believe there is clear and convincing evidence that the termination would be detrimental to [the child] due to the closeness of the parent-child relationship, *nor was this even asserted at the hearing.*" (Emphasis added.) Assuming without deciding this issue is properly before us, we affirm the juvenile court. The mother bore the burden to prove this permissive exception by clear and convincing evidence. *In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018). A parent's love is not enough to prevent termination, nor is the mere existence of a bond. *See In re A.B.*, 956 N.W.2d 162, 169–70 (Iowa 2021); *In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010). Any connection the child may still have with the mother, despite being removed from her for two years at the time of the termination hearing, does not nearly outweigh the need to give this child permanency in light of the mother's failure to provide a safe, stable, and drug-free home.

Finally, we note the State concludes its response to the petition on appeal with a procedural argument about combined permanency and termination hearings, in the event we found scattered references in the mother's brief sufficient to present the issue. We understand the State's concern as appellee in letting

sprinkled mentions of an issue go unchallenged, given the potentially dire consequences if we were to find the State failed to respond to an issue. We re-affirm that "random mention of [an] issue, without elaboration or supportive authority, is insufficient to raise the issue for our consideration," and therefore confine our review to the issues properly presented by the mother. *See Soo Line R.R. Co. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 691 (Iowa 1994).

    **AFFIRMED.**